THE HEIRS OF WILLIAM EMERSON, PLAINTIFFS IN ERROR, *vs.* CHARLES H. HALL, DEFENDANT IN ERROR.

The Josepha Secunda, was condemned for a violation of the laws of the United States, prohibiting the slave trade; and by a decree, the District Court of Louisiana allowed the claim of the collector, the surveyor, and naval officer, who had prosecuted for the forfeiture, to a portion of the proceeds of the sale of the property condemned. This decree was afterwards reversed, and the whole proceeds adjudged to the United States, on an appeal to the Supreme Court. William Emerson, the surveyor, afterwards died; and in 1831, Congress passed an act for the relief of the collector, the heirs of William Emerson, and the heirs of the naval officer; under the authority of which the sums which had been adjudged to those officers, and which had remained in the District Court of Louisiana, were by an order of the Court paid to them according to the provisions of the law. One of the creditors of William Emerson claimed the sum so paid to his legal representatives, as assets for the payment of his debt. Held, that the payment made by order of the District Court, to the minor children of William Emerson, as his legal heirs, was rightfully made: and that the same cannot be considered in their hands as assets for the payment of the debts of their father.

The prosecution of the Josepha Secunda by the officers of the customs of Louisiana, was not done under the authority of any law, or by any authority; and these acts imposed no obligation, either in law or equity, on the government to compensate them. The claim for those services could not have been set up either as an equitable or a legal offset to any demand of the government against them, or either of them; while, under the rules of law, any specific demand on the government which imposed on it even an equitable obligation, might be set up as an offset.

Services rendered under the requirements of law, or of contract, for which a compensation is fixed, constitute a legal demand on the government. Services rendered under an authority which is casual, or in some degree discretionary, may constitute an equitable claim. No individual can be made a debtor against his will. Voluntary benefits may be conferred on him, which may excite his gratitude; or which in the exercise of his generosity he may suitably reward. But this depends on his own volition. It would constitute a singular item under the law of assets, to raise a charge against an individual for a benefit conferred by some voluntary act of kindness. The rule is the same, whether the benefit be conferred on the government or an individual.

A claim against a foreign government for spoliations is not of this character. The demand in such a case is founded on the law of nations, and the obligation is perfect on the offending government.

IN error from the Supreme Court of the eastern district of Louisiana.

In 1829, Charles H. Hall, residing in New York, presented a petition to the Court of Probates of the city and parish of New Orleans, stating that the estate of William Emerson, deceased, was indebted to him, in the sum of seventeen hundred dollars and upwards, with interest; and he prayed the Court, that Charles Byrne, the tutor and curator of the children of William Emerson, should be decreed to allow the debt, and to pay the same.

Mr. Byrne, as tutor and curator of the minor heirs of William Emerson, by his answer, denied that the estate of Emerson was in any wise indebted to the petitioner: and on the 8th of February, 1830, a decree was given in the Court of Probates against the estate of Emerson for the amount of the debt claimed in the petition.

Afterwards a case was submitted to the Court of Probates by the

[Heirs of Emerson *vs.* Hall.]

petitioner, Charles H. Hall, and Charles Byrne, tutor and curator, &c. by which it appeared, that William Emerson died in the year 1828; previous to that time, he, as surveyor, B. Chew, as collector, and E. Lorrain, as naval officer of the port of New Orleans, had, at their sole expense, the brig Josepha Secunda condemned in the name of the United States, in the District Court of the United States, for the Louisiana district, for an infraction of the slave laws; they claimed title to the proceeds of this seizure, as the true and actual captors and seizors, who made the last and only effectual seizure, and prosecuted the same to a final decree of condemnation. The decree of the District Court allowed the claim; but the case having been brought up before the Supreme Court of the United States, that tribunal reversed the judgment, on the ground that Congress had made no provision for their compensation; and they were left, in common with those who made the military seizure, to the liberality of the government. Thereupon, the said collector, and surveyor, and naval officer, applied for relief to Congress, and obtained from that branch of the government, an act entitled " An act for the relief of Beverly Chew, the heirs of William Emerson, deceased, and the heirs of Lorrain, deceased," the same being duly approved on the 3d March, 1831; and in compliance with the provisions of said act, upon motion before the District Court, the moneys remaining in Court after the payment of costs were paid over to Beverly Chew, and to the legal representatives of both Emerson and Lorrain.

The question for the decision of the Court was, whether the money received by the minor children, as the legal representatives of William Emerson, by virtue of the act of Congress of the 3d of March, 1831, could be made liable for the payment of the debts of their father.

The judge of the Court of Probates decreed that the judgment rendered in favour of the petitioner, should be satisfied out of those moneys or any other assets belonging to the estate, in the hands of the curator, or in those of the heirs of the deceased.

Mr. Byrne, as curator and tutor, appealed from this decree, to the Supreme Court of Louisiana; by which Court, the decree of the Court of Probate was affirmed.

This appeal, under the 25th section of the judiciary act of 1789, was prosecuted on behalf of the heirs of William Emerson.

Coxe, for the appellants, contended that the moneys derived by the children of William Emerson, under the act of Congress of 3d March, 1831, were not assets for this payment of the debts of their father. They were a gratuity from the government of the United States; and made no part of the personal assets to which the curator of the estate was entitled. They were not a debt due by the United States to the naval officer. The whole proceeds of the Josepha Secunda, had, by the decree of the Supreme Court of the United States, been held to be the property of the United States. The act

of Congress gave a portion of those proceeds to the officers of the customs; but this was a gift, and not the admission of a claim.

Mr. Justice M'LEAN delivered the opinion of the Court.

This is a writ of error to the Supreme Court of the state of Louisiana, under the 25th section of the judiciary act.

The defendant here, as plaintiff, in the Court of Probate at New Orleans, recovered a judgment in 1830, against the estate of William Emerson, for seventeen hundred and eighty-eight dollars and sixty-two cents; and the question in this case is, whether the heirs of Emerson shall be held responsible for the payment of this judgment under the following circumstances.

In April, 1818, Emerson, being surveyor of the port of New Orleans, with B. Chew, the collector, and E. Lorrain, the naval officer, seized the brig Josepha Secunda, for a violation of the laws which prohibit the importation of slaves, and instituted proceedings against her, which resulted in the condemnation of the vessel and slaves. This judgment being pronounced by the District Court of the United States for Louisiana, was affirmed on an appeal to the Supreme Court of the United States.

On the cause being remanded to the District Court, the negroes having been sold as well as the vessel, a question was raised by several claimants, as to the distribution of the proceeds of the sale: and the District Court, dismissing the claims of others allowed those of the collector, the surveyor, and the naval officer. From this decree there was an appeal to this Court. And as appears from 10 Wheat. 331, this Court decided that the proceeds, under the laws of the United States, should not be paid to the customhouse officers, who made the seizure, but that they vested in the United States. The decree of the District Court, making the allowance, was therefore reversed; and that part of it which dismissed the petition of other claimants was affirmed.

In 1828, Emerson died, leaving heirs.

On the 3d March, 1831, an act, entitled, " An act for the relief of Beverly Chew, the heirs of William Emerson, deceased, and the heirs of Edward Lorrain, deceased," was passed by Congress.

The preamble of this act states, " Whereas, the brig Josepha Secunda was condemned in the name of the United States, in the District Court of the United States for the Louisiana district, in the year 1818, on the seizure and prosecution, and at the sole expense of Beverly Chew, collector of the district of Mississippi, William Emerson, deceased, surveyor, and Edwin Lorrain, deceased, naval officer of the port of New Orleans, for an infraction of the slave laws: and whereas, the one-half of the proceeds of the said brig and her cargo are now deposited, subject to the order of the said Court, which half would have been payable to the said Beverly Chew, William Emerson, and William Lorrain, but for an omission in the laws heretofore passed on that subject; therefore, be it enacted, &c., that the District Court of the United States be authorized and di-

rected to order the proceeds of the said seizure now deposited, subject to the order of said Court, be paid over to the said Beverly Chew, and the legal representatives of the said William Emerson and Edwin Lorrain, respectively."

The question whether the sum of money received by the heirs of Emerson, under this law, was assets in their hands, and liable to his debts, was first raised in the Court of probate, which decided that it was so liable : and this judgment was, on an appeal to the Supreme Court of the state, affirmed.

In the seizure and prosecution of the vessel for a violation of law, Emerson, with those who co-operated with him, rendered a meritorious service to the public. But he acted under no law, nor by virtue of any authority. And his acts imposed no obligation, either in law or equity, on the government to compensate him for his services. Had he been prosecuted on a debt due to the government, he could not have set up these services, either as an equitable or legal offset. And this he might do, under the rules of law, of any specific demand he might have on the government, which imposed on it even an equitable obligation.

It is true, the payment of a debt cannot be enforced against the government by suit; but claims against it are not the less legal or equitable on that account. Services rendered under the requirements of law or of contract, for which a compensation is fixed, constitute a legal demand. Services rendered under an authority which is casual, or in some degree discretionary, may constitute an equitable claim. An individual, by timely efforts, may save from destruction, by fire or otherwise, a large amount of public property. This would be a highly meritorious act; but would it constitute a claim on the government for compensation?

From motives of public policy, the government might bestow a suitable reward on the individual in such a case ; but this would be a gratuity on its part. And if this reward were given to the heirs of such an individual, could it be reached by his creditors? Numerous pensions have been given by law to heirs for the military services of their ancestors; and are these pensions liable to the debts of the ancestors? Under all the provisions of this kind, has it ever been supposed, that the pension, though given to the legal representatives of the deceased, and on the ground of military services, should be paid to his administrators? No individual can be made a debtor against his will. Voluntary benefits may be conferred on him, which may excite his gratitude, and which, in the exercise of his generosity, he may suitably reward. But this depends on his own volition.

It would constitute a singular item under the law of assets to raise a charge against an individual, for a benefit conferred on him by some voluntary act of kindness. To find an obligation in such a case, we must look into those writers on ethics who speak of imperfect obligations, which cannot be enforced. The rule is the same,

whether the voluntary benefit be conferred on an individual, or on the government.

Had Emerson become insolvent and made an assignment, would this claim, if it may be called a claim, have passed to his assignees? We think, clearly, it would not. Under such an assignment, what could have passed? The claim is a nonentity. Neither in law nor in equity has it any existence. A benefit was voluntarily conferred on the government; but this was not done at the request of any officer of the government, or under the sanction of any law or authority, express or implied. And under such circumstances, can a claim be raised against the government, which shall pass by a legal assignment, or go into the hands of an administrator as assets?

If in this form debts could be originated against the government or an individual, there would be no security against such demands. One party, without the consent of the other, makes the contract, and assigns it to his creditors. For if there be even an equitable claim, it arises out of a contract express or implied. A claim against a foreign government for spoliations is not of this character. The demand is, in such case, founded upon the law of nations, and the obligation is perfect on the offending government. It is true, remuneration cannot be recovered against the government by action at law, but if justice be not done, the government of the injured citizen, in the exercise of its discretion, will protect and enforce his rights.

In the case of Comeygs et al. *vs.* Vasse, 1 Peters, 193, this Court held, that the assignees of a bankrupt are entitled to a share of the indemnity for unjust spoliation, provided for under the treaty of 1819 with Spain. But that case is not analogous to the one under consideration. By the law of nations, Spain was bound to indemnify the owners of foreign vessels which had been illegally captured and condemned under her authority.

A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned. It does not go to the administrator as assets. It does not descend to the heir. And if the government, from motives of public policy, or any other considerations, shall think proper, under such circumstances, to make a grant of money to the heirs of the claimant, they receive it as a gift or pure donation. A donation made, it is true, in reference to some meritorious act of their ancestor, but which did not constitute a matter of right against the government.

In the present case, the government might have directed the money to be paid to the creditors of Emerson, or to any part of his heirs. Being the donor, it could, in the exercise of its discretion, make such distribution or application of its bounty as circumstances might require. And it has, under the title of an act, " for the relief of the heirs of Emerson," directed, in the body of the act, the money to be paid to his legal representatives. That the heirs were

2 m 2

intended by this designation is clear; and we think the payment which has been made to them, under this act, has been rightfully made; and that the fund cannot be considered as assets in their hands for the payment of debts.

As the decision of the Supreme Court of Louisiana is not in accordance with this view the judgment of that Court is reversed, with costs.

This cause came on to be heard on the transcript of the record from the Supreme Court of the state of Louisiana, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Supreme Court in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Supreme Court, that further proceedings may be had therein, in conformity to the opinion of this Court.