ROBERT MILNOR, JOHN THOMPSON, DAVID PETRIKIN, AND LEVI
   WOODBURY, SECRETARY OF THE TREASURY, COMPLAINANTS
   AND APPELLANTS, v. GEORGE W. METZ, APPELLEE.

M. was discharged by the insolvent laws of Pennsylvania, after having made, accord-
   ing to the requirements of the law, an assignment of "all his estate, property, and
   effects, for the benefit of his creditors." After his discharge, he presented a petition
   to Congress for a compensation for extra services performed by him as United States
   guager, before his petition for his discharge by the insolvent law. As guager, he had
   received the salary allowed by law; but the services for which compensation was
   asked, were performed in addition to those of guager, by reguaging wines, which
   had become necessary by an act of Congress reducing the duties charged upon them.
   Congress passed an act, giving him a sum of money for those extra services. Held,
   that the assignee, under the insolvent laws, was entitled to receive from the Treasury
   of the United States, the amount so allowed.
Cited, Comyges v. Vasse, 1 Peters, 196; The United States v. M'Daniel, 7 Peters, 1;
   The United States v. Fillebrown, 7 Peters, 50; Emerson v. Hall, 13 Peters, 409.

ON appeal from the Circuit Court of the United States, for the
county of Washington in the district of Columbia.

The appellants, Milnor and Thompson, were, during the years
1836 and 1837, United States guagers for the port of Philadel-
phia, and as such received the full compensation allowed by law
for that period. The duties having been rendered unusually
laborious during the year, by the operation of the act of July
4th, 1836, reducing the duties on wines, under which they were
required to reguage them; they appealed to Congress for extra
compensation, to the amount of their full ordinary fees for these
additional services.

Their memorial to Congress was presented in January, 1838;
and in May, 1840, an act was passed for their relief, by which
the sum of "two thousand seven hundred and fifty-seven dollars
and twenty-three cents, being the amount of fees due to them for
extra services as guagers in the port of Philadelphia, after the
passage of the act of 4th July, 1836, reducing the duty on wines."
George W Metz made no claim before Congress, as the assignee
of Robert Milnor.

In December, 1838, the appellant, Robert Milnor, applied at

T 2

Philadelphia, for the benefit of the insolvent laws of Pennsylvania; and he was discharged in January, 1839, having executed the usual assignment for the benefit of his creditors. The appellee, George W. Metz, was duly qualified, and became the sole assignee.

After the act of 1840 had passed, he applied at the Treasury Department, claiming the amount of the sum allowed by the same to Robert Milnor, being one-half of the whole sum allowed; the other portion belonging to John Thompson.

This application was rejected; and this suit was instituted against the appellants. The Court made a decree in favour of the appellee; and the appellant, Robert Milnor, prosecuted this appeal.

The case was argued by Mr. Clement Coxe, for the appellant; and by Mr. Bradley, for the appellee.

Mr. Coxe contended:

1. That there was no purpose of Milnor to make the dedication claimed; and that his purpose, either way, is immaterial, as the insolvent law determines, without reference to it, what shall, and what shall not be included in the assignment.

2. That the insolvent, at the time of his assignment, had no such interest in the claim upon Congress as could pass by that instrument.

3. That Congress had the right to model their relief at pleasure, and having granted it to Milnor, and not to his assignee, the latter is without relief by the present suit.

Although, in the schedule of property annexed to the petition of Robert Milnor, for the benefit of the insolvent laws of Pennsylvania, a claim on Congress is stated; this does not preclude the denial of the right of the assignee. It is the assignment which gives the right, if any was given. 3 Petersdorff, 486.

The act of Congress limits the salaries of guagers to fifteen hundred dollars; and thus it is obvious that Milnor and Thompson had not a scintilla of legal right to further compensation from the United States. A claim of this kind, being one for a gratuity, a benefaction cannot be passed under the assignment. It must be an actual interest; not an expectancy.

If the assignee of Milnor had any right, it should have been presented to Congress. The power of the legislature over the matter was complete. They have given the sum allowed to Robert Milnor; and the Circuit Court had no power to alter the donation.

The Secretary of the Treasury rejected the application of the assignee, and his decision was conclusive. Cited, Decatur *v.* Paulding, Secretary of the Navy, 14 Peters, 497.

Mr. Bradley, for the appellee, insisted that the claim by the appellee, as assignee of Robert Milnor, to the portion of the sum allowed by Congress to Robert Milnor, was valid; and that the claim had passed to the assignee under the assignment. The appellant claimed from Congress a compensation for extra services performed by him for the United States, before he took the benefit of the insolvent laws of Pennsylvania, and the claim was allowed. There was a subsisting equity in favour of the petitioners. It was such a claim, as, although a suit could not be instituted for its recovery, in an action by the United States, against the petitioners, it would have been matter of set-off. The United States *v.* Tillotson, 7 Peters, 28; United States *v.* Ripley, 7 Peters, 26.

The principle of law which may be derived from these cases is, that if any one shall perform services at the instance or request of the government of the United States, he is entitled to compensation. The right to compensation is property belonging to the party who has done the services, and as such belongs to the creditors of the insolvent.

The principles which are in question in this case, were settled by the Court in the case of Comyges *v.* Vasse, 1 Peters, 193.

It was held in that case, that it was immaterial who presented the claim. The money recovered belonged to the assignee.

Mr. Coxe denied that any legal claim existed on the United States for compensation. The salary of the guagers was fixed by law, and whatever else they obtained was a gratuity. He cited, 13 Peters, 409, as in all respects sustaining the claims of the appellant. The decision of the Court in the case of Comyges *v.*

Vasse, was given on the terms of the Spanish treaty, which fully authorized the claim of the assignee.

Mr. Justice CATRON delivered the opinion of the Court.

The question in this cause is, whether a claim on the United States passed by an assignment made by Milnor, an insolvent, by force of an act of Pennsylvania, where the insolvent resided, and where the assignment took place.

The application was made to the Court of Common Pleas, of Philadelphia county, 24th December, 1838. According to the requirements of the insolvent act, there was presented: "A statement of all the estate, effects, and property of the petitioner, wheresoever situate, and of whatsoever kind." He says, "Your petitioner has no property of any kind except the following claim, viz.:

"A claim on the government of the United States for about three thousand seven hundred and seventy-four dollars and fifty cents."

Assignees were appointed by the Court, to whom the following assignment was made.

Know all men by these presents, that I, Robert Milnor, the above named petitioner, have assigned, transferred, and set over, and by these presents do assign, transfer, and set over unto George W. Metz and Aaron Ross, their heirs and assigns, all my estate, property, and effects whatsoever, to, for, and upon the uses, trusts, and purposes designated by the act entitled "An act relating to insolvent debtors," passed the sixteenth day of A. D. one thousand eight hundred and thirty-six.

Witness my hand and seal, this eleventh day of January, A. D. 1839.

ROBERT MILNOR, [L. S.]

Ross refused to serve, and was discharged by the Court; leaving Metz the sole trustee. On the same day, Milnor was discharged.

On the 2d of May, 1840, Congress passed an act for the relief of Robert Milnor and John Thompson, ordering the secretary of the treasury to pay to them two thousand seven hundred and fifty-seven dollars and twenty-three cents: "being the amount

of fees equitably due to said M. and T. for extra services rendered by them as gaugers at the port of Philadelphia, after the passage of the act of the 4th of July, 1836, reducing the duties on wines, then in custom stores in said port, and commencing with the provisions of said act."

Several petitions had been presented on the subject; the first in February, 1838; the claim was pending before Congress when the assignment was made, and the insolvent discharged. He claimed the money as then due from the United States, and the act of Congress admits the fact. Nevertheless, the answer insists: "That the remuneration was asked as a boon, and respondent has understood and believes, was advocated, and granted as a gratuity."

It is admitted that Milnor was entitled, separately, to one-half of the money ordered to be paid by the act of Congress, and Thompson to the other half.

Milnor applied to the Treasury for one half of the money, as did Metz, the trustee. The department refused to examine the equities of the parties, or look beyond the act of Congress. Metz filed his bill, enjoining Milnor from receiving the money; and had a decree for a perpetual injunction.

The case relied on to sustain the assumption that the money awarded by Congress was a gratuity, is that of Emerson v. Hall, 13 Peters, 409.

It was this: Emerson, Chew, and Lorrain libelled a slave ship, and caused her to be condemned, and claimed half the proceeds of the ship and cargo, which was awarded to them below; but the decree was reversed by this Court, on the ground that Emerson, Chew, and Lorrain, as surveyor, collector, and naval officer, of the port of New Orleans, had no right as captors: and that they stood on the footing of an officer who made a military seizure. Emerson died; and in 1831, Congress passed an act bestowing on his legal representatives, and on Chew and Lorrain, the one half of the condemnation money.

Hall, as a creditor of Emerson, filed his petition in the Probate Court at New Orleans, against Byrne, the curator of the heirs of Emerson, for payment of his debt out of the moneys received under the act of Congress. The Probate Court, and the Supreme Court of Louisiana, on appeal, gave judgment for Hall: and on

29

a writ of error prosecuted to this Court, the judgment was reversed, on the ground that the act of Congress gave the money to Emerson's heirs, as a gratuity; because of the meritorious conduct of their father. Say the Court, "He acted under no law, nor by virtue of any authority; his acts imposed no obligation either in law or equity, on the government. Had he been sued for a debt due to it, he could not have set up these services, either as an equitable or legal set-off." They are declared to be like those, where an individual, by timely exertion, saves the public property from destruction by fire; or where a pension is given to heirs for military services of the ancestor.

The services performed by Milnor, were at the instance of the government, and necessary to execute the act of 1836. But being a second measurement, no express law or regulation of the Treasury Department fixed the fees; and the demand was rejected by the accounting officer, because they had no discretion to go beyond the law, or an express regulation founded on it. The equity of the claim was free from doubt. The gaugers only received fees for specific services, actually performed, and could not receive double compensation; and in this respect the equity was more prominent than in M'Daniel's Case, 7 Peters, 1. M'Daniel was a regular clerk in the navy department, and received a salary. He was ordered by his superiors to perform, and did perform, the extra duties of paying, (1) the navy pensioners; (2) the privateer pensioners; and, (3) to act as agent for navy disbursements. So that all his time may have been devoted to this extra service; and none to the regular office duties of clerk. Because of his regular salary, the accounting officer refuses to allow additional compensation. To cover his claim for this, M'Daniel had retained nine hundred and eighty dollars, and was sued for it by the United States. The defendant's claim was allowed as an equitable set-off.

The case of Fillebrown, 7 Peters. 50, is to the same effect. These cases have been constantly followed, where services had been performed at the instance of the government for which by the strict rules of accounting no credit could be given by the Treasury.

The ground that the government was the debtor, and the claim rested on its discretion; or in other words, that it was as uncertain

[Milnor et al. *v.* Metz.]

as the pleasure of Congress; and until the act of 1840 was passed, no claim existed against the United States, which could be judicially recognised as "property or effects," of the insolvent, we think is decided to the contrary, by this Court, in Comyges *v.* Vasse, 1 Peters, 196.

Vasse assigned under the bankrupt law of 1800. He had been an underwriter on polices of insurance on vessels seized and condemned by the government of Spain. The owners had abandoned for a total loss, which the insurer had paid; and was the successor to the rights of the assured. The sentences of the Spanish Prize Courts were conclusive as to the right to the things condemned; and no claim existed on part of the insurer, that did not depend on the discretion and pleasure of the Spanish government. The equity was as remote, to say the least of it, in that case as in the one before us. By the treaty of 1819, Spain stipulated with this government to pay five millions in full discharge of the unlawful seizures; leaving the United States to distribute the indemnity. Vasse had awarded to him eight thousand eight hundred and forty-six dollars. Comyges was the surviving assignee of the bankrupt. Vasse instituted suit against him, to try the right to the money. This Court held, that although the illegal sentences of the Spanish Prize Courts were irreversible, the party had not lost all right to justice, or claim, upon principles of international law to remuneration; that he had a right both to the justice of his own and the foreign sovereign; and that this right passed by the general assignment of the bankrupt.

The treaty in that case, (as the act of Congress in this,) operated on a pre-existing claim on a government. It follows, if the doctrine of donation did not apply in that case, neither can it in this.

Had a similar claim on the part of Milnor existed against an individual instead of the government, then there can be no doubt he could have recovered by suit; or it would have been the subject of set-off; or could have been assigned. So it would have passed to his administrator in case of death. As the government was equally bound to do its debtor justice, in a different mode, with an individual, we think no sound distinction exists in the two cases; and, therefore, order the decree to be affirmed.