# CIRCUIT COURT OF BALTIMORE CITY.

Filed February 28, 1898.

## FRANCES R. PENNIMAN
VS.
ANNE C. HOOK, ET AL.

*Steele, Semmes, Carey & Bond* for plaintiff.

*Frank P. Clark* for defendants.

WICKES, J.—

By the French Spoliation Act of Congress, approved January 20th, 1885, it is provided that "such citizens of the United States or their legal representatives as had valid claims to indemnity upon the French Government, arising out of illegal captures * * * prior to the ratification of the convention between the United States and the French Republic, concluded on the 30th day of September, 1800, the ratifications of which were exchanged on the 31st day of July following, may apply by petition to the Court of Claims, within two years from the passage of this Act, as hereinafter provided."

Further, it is provided that the Court (of Claims) shall examine and determine the validity and amount of all the claims included within the description above mentioned, together with their present ownership, and if by an assignee, the date of the assignment, with the consideration paid therefor, "and they shall decide upon the validity of said claims according to the rules of law, municipal and international, and the treaties of the United States applicable to the same; and shall report all such conclusions of fact and law as in their judgment may affect liability of the United States therefor," and that "such finding and report of the Court shall be taken to be merely advisory as to the law and facts found, and shall not conclude either the claimants or Congress; and all claims not finally presented within the period of two years limited by this Act, shall be forever barred."

Many difficulties arose in the construction of this Act as to who were legally and equitably entitled to receive the money which Congress might see proper to appropriate for the payment of these claims, and the Court said, in Buchanan vs. United States, 24 Ct. of Cl., p. 81, in referring to the cases which had already been before it: "In none of these cases has the Court assumed to determine who were the next of kin of a deceased claimant; nor whether there are any; nor in what proportions were the several interests of partnership owners; nor whether creditors or descendants have the superior equity; nor whether the children of a bankrupt are entitled to a residue of his estate; nor whether the receivers of a defunct corporation represent creditors or stockholders. In other words, the Court has not assumed to determine what persons are legally or equitably entitled to receive the money which Congress may hereafter appropriate for the discharge of these claims."

These and other conclusions of the Court having been reported to Congress, appropriations were made to pay certain enumerated claims by the Act of 1891, with the following proviso: "Provided, that in all cases where the original sufferers were adjudicated bankrupts, the awards shall be made on behalf of the next of kin, instead of to assignees in bankruptcy, and the awards in cases of individual claimants, shall not be paid until the Court of Claims shall certify to the Secretary of the Treasury that the personal representatives, on whose behalf the award is made, represent the next of kin, and the Courts which granted the administrations, respectively, shall have certified that the legal representatives have given adequate security for the legal disbursement of the awards."

Among other claims presented under the Act of 1885, and within the two years required by the Act, was one on behalf of the estate of a certain Bale or Beal Owings, a merchant of this city engaged in maritime ventures at the close of the last century. Letters of administration were taken out by Mrs. Frances Penniman, a great niece, for the purpose of prosecuting this claim, which arose from the seizure of the "Emily" by the French, within the period prescribed by the Act.

Bale or Beal Owings died in 1831, leaving a will, but no widow or children. He was a partner in the firm of Rogers & Owings, the owners of the vessel, and an additional claim was made on behalf of his estate for the value of the cargo.

These claims were successfully prosecuted; the findings of the Court of Clams were reported to Congress; an appropriation made to pay them; the certificate required by the Act of 1891, and all the other proceedings necessary to be complied with were taken, and the money paid over to Mrs. Penniman, as the administratrix of Bale or Beal Owings, who died in 1831, to be distributed among the next of kin as required by the Act of Congress. At this stage of the proceedings she was met by various claimants upon the fund in her hands.

1. By those who supposed they were entitled to take under the will of Bale or Beal Owings.

2. By the next of kin, irrespective of his will.

3. By the next of kin of a certain other Bale or Beal Owings, of Richard, who died in 1802, who it is alleged was the real owner of the cargo in question.

Under these circumstances Mrs. Penniman has filed this bill, for the purpose of distributing the fund in her hands, under the direction of the Court.

Since the filing of the bill, the Supreme Court of the United States, in Blagge vs. Balch, 162 W. S. R. 439, has construed the proviso to the Act of 1891, to mean that Congress intended the next of kin to be beneficiaries in every case, and that the express limitation to this effect excludes creditors, legatees, assignees and all strangers to the blood. And the Court further said that the words "next of kin," as used in the proviso, mean next of kin living at the date of the Act, to be determined according to the statutes of distribution of the respective States of the domicile of the original sufferers.

This, of course, eliminates from the case all those who claim under the will of Bale, or Beal Owings, to whose administratrix this fund has been awarded, and the only remaining controversy is on behalf of those who claim as the legal representatives of Beal Owings of Richard, who died in 1802.

No reported case, it is said, deals with a condition so peculiar. The contention on their behalf is distinctly placed upon the ground that "the findings of the Court of Claims in this class of cases are not in the nature of judgments and can be collaterally assailed in the State Court where the distribution of the funds is being judicially administered," and further that were this not so, that "in the case here made out by the bill and answer parties justly entitled, if they be parties to the suit would not be barred by such judgment."

It is settled law that the findings of the Court of Claims, in this class of cases, are not judgments. By the very terms of the Act of 1885, they are made "advisory" only, and do not conclude either the claimant or the government. The decisions are numerous to this effect. But this is not all; it is but one step in the chain of procedure. These findings are reported to Congress, which has power to accept or reject or modify them as it sees proper. In this particular instance, whether the findings of the Court were accepted and acted upon, or whether additional proof was required, I am not informed, but certain it is, that an Act was passed appropriating money to pay the claim which Mrs. Penniman represented. It is also certain that the Court of Claims subsequently certified to the Secretary of the Treasury that the administratrix represented the next of kin of Bale or Beal Owings, who died in 1831, and had given bond in the probate Court appointing her, to distribute this fund among his legal representatives, leaving only to the State Court the determination of the question as to who constituted the next of kin in event of controversy as to that fact. This, and this alone, is the power reserved to the State Courts, in all this proceeding, and this, I think, is the measure of our jurisdiction. In Van Wagener vs. The United States, 25 Ct. of Ch. 110, in which there was a conflict between the holder of the record title and the equitable owner, the Court said, "We do not enter judgment in French spoliation cases, nor determine what persons are entitled to the money which Congress may hereafter appropriate, but will lay before Congress all the facts material to questions which must be decided by that body." So that while the Court of Claims do not enter judgments, and finds only facts to lay before Congress, the action of Congress seems to be final where conflicting claims are presented. More especially is this the case, when we remember that these awards stand upon the footing of a gratuity to which the language of the Supreme Court in Emerson vs. Hale, 13 Peters 409, especially applies:

"A claim having no foundation in law but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned. It does not go to the administrator as assets. It does not descend to the heir. And if the government from motives of public policy or any other consideration, shall think proper under such circumstances to make a grant of money to the heirs of the claimant, they receive it as a gift or pure donation."

But we are not entirely without authority as to the final and conclusive character of the proceeding at Washington by which Congress donates a certain sum of money to the next of kin of those whose property was subjected to spoliation by the French Government.

In the case of the United States vs. Gilliat, 164 U. S. 42, the claim was made by John A. Brimmer, administrator of *John Gilliat*, to whom the appropriation was ordered to be paid. He was not able, however, for some reason, to comply with the Act of 1891, and *Charles Gilliat* presented his petition to the Court of Claims for the payment of one third the amount named in the appropriation, on the ground that he was a grandson of one of the three original sufferers, and had been appointed administrator d. b. n. of the estate of his grandfather, &c. The Court, upon hearing, certified to the Secretary of the Treasury for payment to the extent of one-third, &c. Now, this action of the Court of Claims was made under a special Act of Congress of August 23, 1894, in which it was ordered that the money "be paid to the person or persons entitled to receive the same, to be ascertained by the Court of Claims upon sufficient evidence, and certified to the Secretary of the Treasury." The Court decided that the petitioner was administrator of his grandfather's estate, who was an original sufferer—that he represented the descendants and next of kin, and certified to the Secretary of the

738

Treasury for payment to such administrator, &c. The Attorney-General entered an appeal, treating the certificate of the Court of Claims as a judgment.

Mr. Justice Peckham, delivering the opinion of the Court, said: "As the action of the Court of Claims upon the original claim made under the Act of 1885, was not the subject of an appeal to this Court, but was simply advisory in its nature, *the whole matter being left to discretion of Congress*, we think it clear that it was not the intention of that body to permit an appeal from the finding of the Court of Claims upon the subsidiary question as to the particular person to whom the appropriation already made by Congress should be paid. It was undoubtedly the intention of Congress by the language used in the Act of 1894, to refer to the Court of Claims simply the ascertainment of the proper person to be paid the sum which it had already acknowledged to be due to the representatives of the original sufferers from the spoliation, and it was not intended that the decision which the Court of Claims might arrive at should be the subject of an appeal to this Court. We think Congress intended that when such fact had been ascertained by the Court of Claims upon evidence sufficient to satisfy that Court, the fact was to be certified by the Court to the Secretary of the Treasury, and such certificate was to be *final and conclusive.*"

So that whether, as in Van Wagenen's case, Congress is to decide the question arising upon facts reported by the Court of Claims, embracing questions of conflicting claimants, or sees proper to delegate this power to the Court of Claims as in the Gilliat case, the result is that the decision arrived at is *"final and conclusive,"* from which no appeal lies, and into the correctness of which no State Court has jurisdiction to inquire.

There is no suggestion of fraud or misrepresentation in this case. If a mistake was made, as is alleged, it was an absolutely honest mistake, for counsel on both sides of this case, represented Mrs. Penniman in the prosecution of her claims before Congress. I have not gone into the question of error in the proceeding at Washington, for assuming it all to be true, we have no power to correct it.

Nor have I referred to the omission of these parties to present their claim within the two years allowed by the Act. "Forever barred" as they are, from proceeding in the only way pointed out by the Act of 1885, they are seeking now to avoid the consequences of their own laches, by attempting to reap the benefit of the superior diligences of others.

A decree will be signed in favor of the next of kin represented by Mrs. Penniman.