DULANEY v. SCUDDER et al.

(Circuit Court of Appeals, Fifth Circuit. March 28, 1899.)

No. 694.

1. EQUITY—JURISDICTION.
    A bill by the assignee of a contract with the government, who had completed the work thereunder, against the assignor, who was insolvent, and owed the assignee on account of the contract more than was due from the government, and who had filed objections with the government against payment to the assignee, to enjoin the assignor from collecting or receiving the money due for the work, and to settle, as between the parties, which had the better right to the fund, is within the cognizance of equity.

2. PARTIES.
    The government is not a necessary party to a suit by the assignee of a contract with it against the assignor to enjoin his collecting or receiving the money due under it, and to settle as between the parties the better right to the fund.

3. UNITED STATES—CLAIMS AGAINST—ASSIGNMENT.
    There is no claim against the United States, and therefore no assignment of it, within Rev. St. § 3477, declaring void all assignments of a claim against the United States, and all powers of attorney or other authorities for receiving payment of any such claim, unless made after issue of warrant for payment thereof, where one having a contract to do work for the United States, before doing any work under it, contracts with another to obtain advances with which to do the work, agreeing to make payment for the advances out of the moneys to be received from the government for the work, and executes a power of attorney to such other person, authorizing him to collect all money to become due on the contract with the government.

4. SAME—CONTRACTS—ASSIGNMENT.
>Under Rev. St. § 3737, declaring that any assignment of a contract with the United States shall cause the annulment of the contract, so far as the United States are concerned, the government may treat it as annulled, or recognize the assignment.

5. EQUITY—MATTERS CONSIDERED.
>The court having taken jurisdiction of a suit by the assignee of a contract with the United States against the assignor to enjoin the assignor from collecting or receiving the money due under it, properly ascertains the amount due complainant from defendant, and renders a personal decree against him for that sum.

Appeal from the Circuit Court of the United States for the Southern District of Mississippi.

Murray F. Smith, for appellant.

S. H. King, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge.    L. C. Dulaney, the appellant, made a written contract with an officer representing the United States, binding himself to construct certain levees. He agreed to furnish the labor and material, and to complete them in a manner satisfactory to the government. Dulaney was insolvent, and unable to carry out his agreement without assistance. On the 31st of March, 1894, to get the money and supplies to do the work, he made a contract with Scudder & Co. This contract is in writing, and by its terms Dulaney was to repay Scudder & Co. for the advances made to him, out of money he was to receive from the government for the work on the levees. With the contract, Dulaney executed a power of attorney to Scudder & Co. authorizing them to collect and receipt for all money to become due on Dulaney's contract with the government. The agreement referred to the power of attorney executed at the same time in these words: "In case the power of attorney executed by the said Dulaney shall not be satisfactory to the United States authorities, he agrees to execute such other or others as may be necessary to conform to the requirements of said authorities." The power of attorney was submitted to the government, and accepted as satisfactory, after requiring a change in the acknowledgment. The estimates, when due, while Dulaney had charge of the work, were paid to Scudder & Co. under this contract and power of attorney. In May, 1895, it became known to Scudder & Co. that Dulaney had failed to comply with the terms of his contract with the government, and that the government was about to annul the contract. Scudder & Co. had already made large advances to Dulaney. To avoid the loss of advances already made, Scudder & Co., on the 27th day of May, 1895, made another agreement with Dulaney. By this agreement Dulaney transferred certain personal property to Scudder & Co., and also assigned to them "all his rights and interest" in the contract which he had made with the government; Scudder & Co. agreeing to finish the work which Dulaney had, in the first instance, agreed to do. Scudder & Co. proceeded to finish the work, taking entire charge of it. As the work progressed, payments were made to them upon estimates made pursuant to the original contract between Dulaney and the gov-

ernment. When the work was finished, it was accepted by the government, and the estimate for the final payment was made; but, before it could be paid to Scudder & Co., Dulaney gave the government written notice that he had revoked his power of attorney, and objected to this final payment being made to Scudder & Co. The amount then due from the government on the work was about $7,715, and Dulaney was, on account of these transactions, indebted to Scudder & Co. in a much larger sum. Dulaney continues insolvent, and the substantial subject of this litigation is the right to the money due for the work, and now held by the government. On the 27th of May, 1896, Scudder & Co. filed their bill in chancery against Dulaney, alleging the facts that we have briefly stated, and praying for general relief, and specially that Dulaney be perpetually enjoined from collecting or receiving the money due for this work. The circuit court overruled a demurrer to the bill, and on the final hearing enjoined Dulaney as prayed for; and also rendered a decree against Dulaney for the amount found to be due Scudder & Co. The cause is brought here by appeal, and it is urged that there is no equity in the bill, that the United States was a necessary party to the suit, and that sections 3477 and 3737 of the Revised Statutes of the United States make the dealings between the parties illegal, and that, therefore, the contracts between Dulaney and Scudder & Co. are against public policy, and void.

1. It is not necessary to examine the questions whether the bill contains equity as a bill for an accounting or as one to prevent a multiplicity of suits. Scudder & Co. had earned, and are certainly the equitable owners of, the fund in controversy, which is withheld by the government. The contract under which the work was done was originally with Dulaney. He is now claiming the fund, and has given notice to the government of the revocation of the power of attorney under which it was to have been paid to Scudder & Co. Dulaney is insolvent. Unless the government is bound by its dealings with Scudder & Co.,—a question not necessary to be decided,— it has the right to either recognize or reject the power of attorney of Dulaney and his contract with Scudder & Co. If Dulaney should receive the money, Scudder & Co. would be without remedy. The jurisdiction of equity for the protection of contract rights is not limited to the original parties to the agreement, but is often exercised in favor of their assignees. Under the circumstances of this case, the necessity of protecting the assignee by the writ of injunction is sufficient of itself to give equity jurisdiction. 2 High, Inj. (3d Ed.) § 1113. In Milnor v. Metz, 16 Pet. 221, the fund in controversy was in the treasury. The secretary refused to recognize the claim of either party, and waited for the conflicting claims to be adjusted by the courts. Metz filed his bill enjoining Milnor from receiving the money, and had a decree of perpetual injunction, which was affirmed by the supreme court. The case of Phelps v. McDonald, 99 U. S. 298–307, was a contest in equity as to the ownership of money which was not within the jurisdiction of the court. The court said, "Whether the money be here or abroad, the assignee is entitled to have the question finally settled whether he or McDonald has the better right." The allegations of the bill make a case within the jurisdiction of equity to enjoin

Dulaney, and to settle, as between the parties, which has the better right to the fund in controversy.

2. In this suit it was not necessary that the United States be made a party defendant. The United States cannot be sued except by their consent. The position could not be sustained that the complainants would be deprived of their equitable remedy by injunction against Dulaney, because the United States did not consent to be sued. In the case of Milnor v. Metz, supra, the United States was not made a party defendant; and in Phelps v. McDonald, supra, the court granted relief by a decree in personam, although the property involved was not in its territorial jurisdiction. The purpose of this suit was to settle the controversy between the parties to it, and the decree rendered is not binding on the United States, but would protect the government in disregarding the notice of Dulaney that he had revoked the power of attorney given to Scudder & Co.

3. There are two sections of the Revised Statutes that bear upon the defenses made, and they should be examined together. Section 3477 is as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof. * * *"

This section, it will be observed, relates to the transfers of any "claim" against the United States.

Section 3737 relates to the transfer of "contracts" and is as follows:

"No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States."

These statutes have been often the subject of construction by the courts, and it has been uniformly held that their purpose is the protection of the United States. In Hobbs v. McLean, 117 U. S. 576, 6 Sup. Ct. 874, the court said:

"The sections under consideration were passed for the protection of the government. They were passed in order that the government might not be harassed by multiplying the number of persons with whom it had to deal, and might always know with whom it was dealing until the contract was completed, and a settlement made."

In Goodman v. Niblack, 102 U. S. 560, Mr. Justice Miller, speaking for the court, after stating the mischiefs these statutes were intended to prevent, said:

"Both these considerations, as well as a careful examination of the statute, leave no doubt that its sole purpose was to protect the government, and not the parties to the assignment."

There are many cases and opinions to the same effect. Bailey v. U. S., 109 U. S. 432, 3 Sup. Ct. 272; 15 Op. Attys. Gen. 245; 16 Op.

Attys. Gen. 278.   The intention of congress in enacting these statutes, and their purpose, should be kept in view while constructing them. The record shows that Dulaney was insolvent when he made the contract with the government, and that he contracted with Scudder & Co. to obtain the advances before he had performed any work on his contract.   When he made the contract of March 31, 1894, and executed the power of attorney, he had no claim against the government.   He had done no work.   In Hobbs v. McLean, supra, the court said:

"When those articles were signed, there was no claim against the government to be transferred.   *   *   *   What is a claim against the United States is well understood.   It is a right to demand money from the United States. Peck acquired no claim in any sense until after he had made and performed wholly, or in part, his contract with the United States.   Section 3477, Rev. St., it is clear, only refers to claims against the United States which can be presented by the claimant to some department or officer of the United States for payment, or may be prosecuted in the court of claims."

The arrangement, therefore, made by Dulaney with Scudder & Co. to obtain the means to carry out the former's contract with the government, was not the transfer of a claim within the meaning of section 3477, and does not violate the letter or spirit of that section.   This agreement and power of attorney of March 31, 1894, are not made null and void, as between the parties to it, by the statute.   On the 27th of May, 1895, another contract was made between Dulaney and Scudder & Co.   By the terms of this contract, Dulaney transferred his interest in his government contract to Scudder & Co.   The language used is:

"The said L. C. Dulaney does hereby transfer, assign, and set over to said parties of the second part (Scudder & Co.) his said contract, and all his rights and interests thereunder;   the said parties of the second part agreeing and obligating themselves to complete said levee work according to the conditions of the said contract and requirements of the U. S. government."

Under this transfer, Scudder & Co. completed the work, received payments from the government on estimates, and now claim to own the amount due from the government for the work.   This last agreement is the transfer of a contract, within the meaning of section 3737. Such transfers are not, by that section, declared null and void.   The statute causes the "annulment of the contract   *   *   *   so transferred so far as the United States are concerned."   It is intended, as we have shown, for the protection of the United States.   The government was free to treat it as annulled, or to recognize the assignment. In Burck v. Taylor, 152 U. S. 648, 14 Sup. Ct. 701, commenting on this statute, the court said:

"The express declaration that, so far as the United States are concerned, a transfer shall work an annulment of the contract, carries, by clear implication, the declaration that it shall have no such effect as between the contractor and his transferee.   In other words, as to them, the transfer is like any other transfer of property, and controlled by the same rules.   Its invalidity is only so far as the government is concerned, and it alone can raise any question of the violation of the statute.   The government, in effect, by this section, said to every contractor, 'You may deal with your contract as you please, and as you may deal with any other property belonging to you, but, so far as we are concerned, you, and you only, will be recognized either in the execution of the contract or in the payment of the consideration.' "

The court having taken jurisdiction of the cause to settle this controversy as to the ownership of the fund, and to enjoin Dulaney from receiving it, it is a familiar principle that it should settle the whole matter. It was right, therefore, to ascertain the amount due the complainant from the defendant, and to render a personal decree for such sum. The decree of the circuit court is affirmed.