### In re GHAZAL.

(District Court, E. D. New York. July 14, 1908.)

BANKRUPTCY—JURISDICTION OF COURT—CLAIMS AGAINST GOVERNMENT FOR RE-
WARDS.

In a proceeding in involuntary bankruptcy, issue was joined on the
question of insolvency. A receiver was appointed, and the usual order
made restraining all persons from turning over property of the estate to
any one, except the receiver. The alleged bankrupt claimed rewards
from the Treasury Department, under Act June 22, 1874, c. 391, § 4, 18
Stat. 186 (U. S. Comp. St. 1901, p. 2019), for information given relating
to smuggled goods, one of which claims had been allowed by the Secretary,
and the amount was in the hands of the collector, to be paid to the
claimant. The other claims had not been passed on. The alleged bank-
rupt filed a motion for an order excepting the Secretary and collector
from the restraining order, and directing them to pay such claims to
him. *Held*, that the court had no jurisdiction to make such an order;
the allowance of the claims and the amount allowed being wholly dis-
cretionary with the Secretary, and neither he nor the collector being
before the court, and especially while the issue of bankruptcy was pending
and undetermined.

[Ed. Note.—Jurisdiction of federal courts in suits relating to bank-
ruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

In Bankruptcy.

Arthur M. King, for alleged bankrupt.
Joseph H. Buhler, for temporary receiver.

CHATFIELD, District Judge. The alleged bankrupt has fur-
nished certain information to the Treasury Department of the United
States, in different matters, for which he claims a reward, under the
provisions of Act June 22, 1874, c. 391, §§ 3 and 4, 18 Stat. 186
(U. S. Comp. St. 1901, pp. 2018, 2019). Four sales of seized prop-
erty have been had, with reference to which the alleged bankrupt
makes claim for reward, and with relation to one of these sales the
Secretary of the Treasury did, previous to the filing of the petition
in bankruptcy, fix the amount of the reward to be allowed at $428.-
93. This sum is now on deposit with the collector of the port of
New York and ready for payment. The other three claimed re-
wards are what may be termed inchoate, and from the language of
the statute it is apparent are entirely dependent upon the opinion of
the Secretary of the Treasury and within his discretion. U. S. v.
Queen (D. C.) 105 Fed. 269; 24 Opin. Atty. Gen. 61.

A petition in bankruptcy was filed against Ghazal, who claims
to be entitled to these rewards, on the 29th day of April, 1908, and
an answer denying insolvency, as well as disputing the claims of two
petitioning creditors, has been interposed. A receiver was appointed,
and the usual restraining order made, by which all persons were for-
bidden to turn over to any person, except the receiver any prop-
erty belonging to the alleged bankrupt. The alleged bankrupt has
now made a motion to have the Secretary of the Treasury and the
collector of the port exempted from the operation of the injunction
above referred to, and for an order restraining the receiver from at-
taching the moneys now in the hands of the collector of the port,

for an order restraining the receiver from receiving the same sum or interfering therewith if paid to Ghazal, and for an order directing the collector of the port to pay · over the amount to the bankrupt. The affidavits submitted, and the record of this court, show the facts recited above, and both the receiver and the bankrupt have referred the court to various cases in support of their contention.

In Williams v. Heard, 140 U. S. 529, 11 Sup. Ct. 885, 35 L. Ed. 550, a valid claim under the decision of the Commissioners of Alabama Claims, established under the statutes of the United States, was held to be property, and to pass to the assignee of a bankrupt under an assignment made prior to the award. This case was expressly based upon the doctrine that the government did not create the right, but that under the law of nations, and as recognized by the act of Congress, the claim for damages was vested in the individual wronged, and that the United States, as distributing agent, and as the party to pass upon the various amounts to be allowed did not, by the judgment of the Commissioners, create the obligation or property right of the claimant. In other words, the claim was a property right existing before an adjudication was had as to the extent or amount to be paid.

In the case of U. S. v. Borcherling, 185 U. S. 223, 22 Sup. Ct. 607, 46 L. Ed. 884, the same principles are recognized, and several cases cited. The court holds that an award of the United States Court of Claims of the amount due a claimant under an act of Congress providing for the ʼrelief of certain individuals is a property right, such that payment to a receiver would protect the Treasurer of the United States.

In the case of Milnor v. Metz, 41 U. S. 221, 10 L. Ed. 943, a gauger in the service of the United States Treasury Department was held to have property, passing under insolvency laws, in a claim for extra services performed in connection with his regular duties, and allowed by an act of Congress passed subsequent to the insolvency assignment. The decision in this case was based upon the theory that the services performed were at the instance of the government, and a part of the duties lawfully required of the gauger, but that no law was in existence at the time of the rendering of these services providing for payment therefor. The opposite situation is shown by the case of Emerson v. Hall, 38 U. S. 409, 10 L. Ed. 223, in which a claim to the proceeds of the seizure of a slave vessel was held to be no asset of the estate of the claimant; the court saying:

"A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned. It does not go to the administrator as assets. It does not descend to the heir."

Congress in this particular instance had passed a law allowing proceeds of the seizure to the heirs of one of the claimants, some years after his death, and an attempt was made to have this sum applied to pay the debts of the deceased claimant, and to prevent the payment of the money to their heirs.

These cases above set forth illustrate the limits of both contentions; but neither line of cases is entirely conclusive upon the ques-

tion of within which category the present claim must fall. If the right to a reward should be considered an asset, one result would follow; while, if the reward should be considered in the light of a gift, the opposite decision would be necessary. And in connection with the question section 6 of the same statute must be considered. By this it is provided:

"That no payment shall be made to any person furnishing information in any case wherein judicial proceedings shall have been instituted, unless his claim to compensation shall have been established to the satisfaction of the court or judge having cognizance of such proceedings, and the value of his services duly certified by said court or judge for the information of the Secretary of the Treasury."

The District Court for the Southern District of New York considered these statutes in Re Jayne, 28 Fed. 419, and there held that sections 3 and 6, above quoted—

"give no specific interest in the fund to the informer, even after payment of the money into the treasury. As the petitioner's right must be derived wholly through the act of 1874, there is nothing remaining to the informer analogous to a right in rem, but only a personal claim against the government to a reasonable compensation."

In that case, however, the claim under discussion was decided to be governed by section 3090 of the Revised Statutes, which was repealed by the act of 1874, above referred to. And it will be noticed that Judge Brown, in this decision, says that the petitioner has "no specific interest in the fund" but merely a "personal claim against the government." This language, again, is not conclusive upon the question as to whether such "a personal claim against the government" is to be considered property, and one of the assets of the insolvent.

But the statement of these propositions is sufficient to show that this court has no jurisdiction upon this present motion to decide the question raised. The Secretary of the Treasury is not a party hereto, nor can this court, upon this record, determine what the ruling of the Secretary of the Treasury should be, if the alleged bankrupt claims the reward as a gratuity.

The restraining order was directed to any individual having property of the bankrupt, and the Secretary of the Treasury and the collector of the port have seen fit to withhold payment because of the existence of this order. If the Secretary of the Treasury decides, if so advised by the proper legal officers, that the claim for reward should be treated as an asset of the estate of the alleged bankrupt, no action on the part of the receiver would be necessary. If either the receiver or the alleged bankrupt should attempt to enforce a claim to the reward, against the Secretary of the Treasury, that claim must necessarily be determined by a forum having jurisdiction, and not academically by this court upon an application for the decision of a question in negative form, to wit, that the alleged bankrupt's estate is not entitled to keep property which it has not in its possession.

If the collector of the port should pay the sum in question to the alleged bankrupt, action on the part of the receiver or trustee, to obtain possession of the fund or to restrain the collector, might bring

the parties before this court in such a manner as to involve a determination of the question indicated. In the same way, if the collector of the port should pay the money to the receiver, a claim on behalf of the alleged bankrupt could be litigated in the bankruptcy proceeding, even if the collateral issue arising under the provisions of the act of 1874 might be necessarily involved. But so long as the collector of the port retains in his hands the fund in question, even though he may be nominally respecting the restraining order in so doing, the right to that fund cannot be decided as between two claimants in this court and on this motion.

Further, the interposition of an answer denying insolvency and acts of bankruptcy raises an issue pending the determination of which the custody of the fund is immaterial, so long as its present status is maintained. Especially would this be true if the issue of insolvency should be determined in favor of the alleged bankrupt.

The motion as made must be denied.