In re EVANS.

(District Court, W. D. Tennessee, E. D.    September 27, 1918.)

No. 979.

BANKRUPTCY ⊚~138(1)—PROPERTY PASSING TO TRUSTEE—WAGES EARNED PRIOR TO BANKRUPTCY.

Bankrupt was of a class of railroad employés which had demands for increased wages pending and undetermined when the roads were taken over by the government, and remained in the service on promise of the Director General to consider the claims, and that, if allowed, the increase should date from that time. The increase was allowed and paid after the bankruptcy. *Held*, that so much of it as was earned prior to that time passed to the trustee as part of the estate.

In Bankruptcy. In the matter of W. C. Evans, bankrupt. On review of order of referee. Confirmed.

Appleby & Johnson, of Lexington, Tenn., for bankrupt.

McCALL, District Judge. This case is before me on a certificate of T. A. Lancaster, Esq., one of the referees of this court, for a review of his action in dismissing the petition of the bankrupt filed in this case, to determine the respective rights as between the trustee and bankrupt to certain funds now in the hands of the referee. There is no disagreement about the material facts, which are in substance as follows:

In a voluntary proceeding in bankruptcy W. C. Evans was adjudged a bankrupt on May 18, 1918. A trustee was duly appointed. The money in question, $189.65, is the amount of additional and back pay allowed by W. G. McAdoo, Director General of the Railroads of the United States, to W. C. Evans, the bankrupt, a brakeman and employé of the Nashville, Chattanooga & St. Louis Railway Company, for labor rendered by him from January 1, 1918, to May 18th, the date of adjudication. The order of the Director General was promulgated May 25, 1918, seven days after adjudication. The question for determination before the referee was whether the $189.65 back pay goes to the bankrupt estate, or whether it goes to the bankrupt as after-acquired property. The referee held that it goes to the trustee. For a review of his actions the case has been certified to me.

The question is not free from difficulty. On the one hand, it is urged that the service for which the additional and back pay was allowed was rendered by the bankrupt prior to adjudication, and is therefore a part of the bankrupt estate. On the other hand, it is urged that the additional and back pay was only a possibility, and as such it had no value, and was not transferable, and hence was not a part of the bankrupt estate, within the meaning of the Bankruptcy Act.

Subsection 5, section 70, of the Bankruptcy Act of July 1, 1898 (30 Stat. 565, c. 541 [Comp. St. 1916, § 9654]), provides that the trustee— "shall * * * be vested * * * with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * property which prior to the filing of the

⊚~For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

Under subsection 5 the trustee took such title to this fund as was vested in the bankrupt, except it be exempt property. There is no claim of exemption; hence it follows that, if the bankrupt on the date of adjudication was vested with such title to the claim for $189.65 as "he could by any means have transferred," the funds passed to the trustee.

It is a part of the history of the country, and of common knowledge, that just prior to January 1, 1918, a class of railway employés, to which class the bankrupt belonged, made a demand of their employers for an increase of compensation for their services, coupled with a statement that, if the increase was not allowed, they would go out on a strike. This matter was under consideration at the time the railroads were taken over by the government, through the Director General of Railroads. To meet that condition the Director General requested the railroad employés to continue in the railroad service under the management of the government, and that he would take their demand for increased pay under advisement, with a statement, if he decided they were entitled to an increase, he would make the order retroactive, so as to be effective as and from January 1, 1918; so that from January 1, 1918, up to May 18, 1918, the employés were in the service of the United States at the rate of pay which they had theretofore received from the railroad companies, with a demand for increase of pay pending before the Director General of Railroads, and the assurance that, if he found their claim meritorious, he would allow it as and from January 1, 1918. He did so find, and allowed it in accordance with his promise.

The employés, therefore, did have a claim for increased wages pending decision, with the assurance, if allowed, they would receive it as a supplement to the rate of wages in force at the time the railroads went into the hands of the Director General. At the time of bankruptcy in this case, the bankrupt had rendered the service. The claim for increase in pay was pending. As was said by Mr. Justice Lamar, speaking for the Supreme Court of the United States in Williams v. Heard, 140 U. S. 529, 11 Sup. Ct. 885, 35 L. Ed. 550:

"There was at least a possibility of their payment by Congress—an expectancy of interest in the fund; that is, a possibility coupled with an interest."

At the time of bankruptcy was the bankrupt's claim for and expectancy of back pay by any means transferable? This question may be answered by asking another. If, instead of having been adjudicated a bankrupt on May 18, 1918, the bankrupt had died, would the fund in question have passed to his administrator? An answer is found to this latter question in Comegys v. Vasse, 26 U. S. (1 Pet.) 218, 7 L. Ed. 108, when, considering a similar question under Bankruptcy Act April 4, 1800, c. 19, 2 Stat. 19, Mr. Justice Story said:

"It will not admit of question that the rights devolved upon Vasse by the abandonment could, in case of his death, have passed to his personal representative, and, when the money was received, be distributed as assets."

The principles of that case were applied in Milnor v. Metz, 41 U. S. (16 Pet.) 221, 10 L. Ed. 943, to a case of a claim for extra pay for

services rendered by a bankrupt as gauger, which, although presented to Congress prior to his adjudication in bankruptcy, was not recognized by that body, or satisfied, until afterwards; the court holding that the claim passed to the assignee as a part of the bankrupt's estate, and that the doctrine of donation did not apply. Williams v. Heard, supra.

To illustrate: If we assume that, at the time the Director General took charge of the railroads, the employés had said to him:

"We will not continue to work for the rate of pay we have been receiving, but at your request we will continue and work for the government without any stated wage, until you have decided what our services are reasonably worth, and then pay us at that rate in one sum as and from January 1, 1918, less any advancement you may have from time to time made."

Under such circumstances, would the money so earned by the bankrupt have passed to the trustee? It seems that it should. I am inclined to the opinion that the bankrupt on the day of adjudication could have sold and transferred his pending claim for additional pay for services rendered from January 1, 1918, to that date, and the transferee would have been entitled to the amount of increased back pay, if and when granted. It was not a gift, or gratuity, or bonus. The Director General is not authorized thus to dissipate either the earnings of the railroads or the funds of the United States. He ordered it paid because in his judgment the employés had earned it, and it justly belonged to them, which is in effect to say that they had earned and should have received, on each previous pay day, compensation at the increased rate. The authorities cited and relied on by the bankrupt are either not in point or not controlling.

An order will be entered, confirming the action of the referee, with costs, and referring the case to him for further proceedings under the Bankruptcy Act.