JOHN K. NUTT, ADMINISTRATOR, ET AL., *v.* ELIZABETH A. FORSYTHE ET AL.

JOHN K. NUTT, ADMINISTRATOR, ET AL., *v.* GERARD BRANDON, ADMINISTRATOR, ET AL.

JOHN K. NUTT, ADMINISTRATOR, ET AL., *v.* PATRICK HENRY, EXECUTOR, ET AL.

THREE CASES.

DESCENT AND DISTRIBUTION. *Deceased heirs. Legatees.*

The representatives of deceased heirs are entitled to share with the living heirs a sum of money appropriated by Congress to the administrator of their common ancestor in payment of a claim against the government.

FROM the chancery court of Adams county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

In these cases the appellees—Mrs. Forsythe et al.; Brandon, administrator, et al.; and Henry, executor, et al., respectively— were petitioners. In each case the chancery court was asked to require the appellant, John K. Nutt, administrator, etc., to

recognize the petitioners as distributees of the estate of which he was administrator, and to enforce distribution. From a decree in each case in favor of the respective appellees, petitioners, and complainants, the administrator, Nutt, and others, appellants in each case, appealed to the supreme court. The appellants other than John K. Nutt, administrator, were the living heirs of Haller Nutt, deceased. The facts are stated in the opinion of the court.

*Percy & Campbell,* for appellant, Nutt, administrator, in each of the cases.

A claim having no foundation in law, but depending entirely upon the generosity of the government, cannot be assigned. It does not go to the administrator as assets. It does not descend to the heir. If allowed by the government and appropriation is made therefor, it is a mere gratuity or donation. *Emerson's Heirs* v. *Hall,* 13 Pet., 409; *Blagge* v. *Balch,* 162 U. S. R., 439; *Thomas W. Campbell, Assignee,* v. *U. S. Ct. Cls.* (decided November 20, 1893); *Heard* v. *Sturgis,* 146 Mass., 545; *Taft* v. *Marisly,* 120 N. Y., 474; *Brooks* v. *Ahrens,* 68 Md., 212; *Kingsbury* v. *Mattocks,* 81 Me., 310.

In *Comeygs* v. *Vasse,* 1 Pet., 196, the claim was on account of insurance premiums which had been paid on vessels that were illegally captured by the Spanish government, and the claim was held to be assignable; in *Phelps* v. *McDonald,* 99 U. S. R., 298, the claim was on account of cotton belonging to a British subject, which he had purchased under permits from the President of the United States and Secretary of the Treasury, and which was destroyed by the Federal army during the civil war, and the claim was held to be assignable; and in *Williams* v. *Heard,* 140 U. S. R., 529, the claim was for insurance premiums paid on vessels which had been destroyed by the Alabama and other Confederate cruisers sailing from British ports, and the claim was held to be assignable; but the claims in these three cases were governed by principles of in-

ternational law, and are differentiated from the claim in controversy, as will be seen by careful reading of them.

In *Emerson's Heirs* v. *Hall, ubi supra,* the court in commenting upon *Comegys* v. *Vasse,* said, "By the law of nations Spain was bound to indemnify the owners of foreign vessels, which had been illegally captured and condemned under her authority;" and the cases of *Phelps* v. *McDonald,* and *Williams* v. *Heard, ubi supra,* are based upon *Comegys* v. *Vasse.* In *Milnor* v. *Metz,* 16 Pet., 221, the claim was for extra services rendered by the gauger at the port of Philadelphia, under the act of Congress of 1836, for which no fees were prescribed, and the claim was held to be assignable; but, as shown in that case, the services performed by the gauger were at the instance of the government, and were necessary to execute the act of 1836; and in *Erwin* v. *United States,* 97 U. S. R., 392, the claim was for cotton which had been captured by the Federal authorities during the civil war, and which had been sold and the proceeds paid into the treasury of the United States, and the claim was held to be assignable; but that claim arose under the Captured and Abandoned Property Act of 1863, which gave the right and prescribed the remedy to be reimbursed for such property.

These are the only cases that have come under our observation which seemed to justify appellees' contention that the claim in controversy was assignable; but, as stated, the claims in the first three of these cases were governed by principles of international law, and the claims in the last two of these cases were based on existing statutes, and all of them were legal claims.

A claim for property, which was enemy's property, in enemy's territory, and was taken by military authorities in the exercise of the lawful right of a belligerent, is not a claim possessing an attribute of property, but it is like a pension claim, personal, and dependent upon the individual loyalty of the individual sufferer and the clemency of Congress. Such

was the claim in controversy, it did not possess an attribute of property. Its consideration by the court of claims was on account of the personal status of Haller Nutt, the owner, as being loyal to the United States throughout the civil war; and when finally allowed by Congress, it was done as a mere gratuity, on account of his loyalty, and not as a property right.

*Brown & Martin,* for appellants, in each of the cases, Calvin R. Nutt, Julia W. Nutt, and Lillie Nutt Ward, living heirs of Haller Nutt, deceased.

Counsel made the same points as preceding counsel, and cite the following authorities:

*Comegys* v. *Vasse,* 1 Pet., 193; *Emerson* v. *Hall,* 13 Pet., 409; *Ib.,* 10 L. ed., 223; *Erwin* v. *United States,* 97 U. S., 392; *Ib.,* 24 L. ed., 1065; *Williams* v. *Heard,* 140 U. S., 529; *Ib.,* 35 L. ed., 550; *Blagge* v. *Balch,* 162 U. S., 439; *Ib.,* 40 L. ed., 1032; *Briggs* v. *Walker,* 171 U. S., 466; *Ib.,* 43 L. ed., 243; *Price* v. *Forrest,* 173 U. S., 410; *Ib.,* 43 L. ed., 749; *Campbell, Assignee,* v. *United States* (decided by the court of claims on November 20, 1893); *Phelps* v. *McDonald,* 99 U. S., 298; *McKay's Case,* 27 Ct. Cls. R., 442; 13 *Ib.,* 241; *Dockery's Case,* 26 Ct. Cls. R., 148; *Heard* v. *Sturgis,* 146 Mass., 545; *Taft* v. *Marisly,* 120 N. Y., 474; *Brooks* v. *Ahrens,* 68 Md., 212; *Kingsbury* v. *Mattocks,* 81 Me., 310; *Estate of Moore,* 26 Ct. Cls. R., 254; Supplement to Revised Statutes of United States, vol. 1 (2d ed.), p. 403; 16 Am. & Eng. Ency. Law (2d ed.), 1146-1147 and authorities cited in note 1, p. 1147; 2 Am. & Eng. Ency. Law, 87.

*Reed & Brandon,* for the appellees, Forsythe et al., and Brandon, administrator.

Counsel cite the following cases in support of the decree of the court below:

22 U. S. Statutes at Large, 88; 22 Statutes at Large, 485; 24 Statutes at Large, 505; Chap. 887, p. 207, Statutes at

Large 1901-02; Genesis, Chap. 48, p. 22; Genesis, Chap. 15; Plutarch in *vita* Solon; Roman 12 tables; Inst. 2, 22, 1; 4 Kent, 502 and note, 503, 504; 2 Black. Com., 490-492; Maine Ancient Law, 126; 1 Williams Ex., p. 6, note 3; *Erwin* v. *United States,* 97 U. S., 393; Jarman on Wills, p. 40; *Dowell* v. *Cadwell,* 4 Saw., 228 (1877); 131 Mass., 521; U. S. Statutes at Large 1901-02, Chap. 887, p. 218; 26 U. S. Statutes at Large, 862; *Blagge* v. *Balch,* 162 U. S., 439; *Emerson* v. *Hall,* 13 Pet., 409; 6 Statutes at Large, 464; 1 Bouvier's Law Dic., 830; 1 Kent Com., 92; Military Laws of the U. S. 1897, 779; Hague Convention War on Land, U. S. Statutes 1901-02, p. 48; *Dow v. Johnson,* 100 U. S., 158; 2 Kent, 338; *Mitchell* v. *Harmony,* 13 Howard, 115; *United States* v. *Klein,* 13 Wallace, 136; *United States* v. *Alexander,* 2 Wall., 404-423; *Comegys* v. *Vasse,* 1 Pet., 193; *Williams* v. *Heard,* 140 U. S., 529; *Comegys* v. *Vasse,* 1 Pet., 216; *Phelps* v. *McDonald,* 99 U. S., 298; *Buchanan* v. *Lawson,* 109 U. S., 659; 3 Sup. Ct. Rep., 479; *United States* v. *Weld,* 127 U. S., 51; 8 Sup. Ct. Rep., 1000; *Price* v. *Forrest,* 173 U. S., 410, 422; *Briggs* v. *Walker,* 171 U. S., 466; *Butler* v. *Gorely,* 146 U. S., 309; *Leffingwell's Appeal,* 62 Conn., 361 (25 Atlantic, 455); *In re* Banks Will, 87 Maryland, 442 (40 Atlantic Rep., 274); *Jernegan* v. *Osborn,* 155 Mass., 210, 29 N. E., 521; *Stanly* v. *Swally,* 140 U. S., 517; 147 U. S., 517; 163 U. S., 427; *Maitland* v. *Grissinger,* 1 Wood. (Pa.), 294; 8 B. Mon. (Ky.), 165; *Rogers* v. *Kennard,* 82 Tex., 58; *Merriweather* v. *Herran,* 2 Wash. Ter., 58; *Burch* v. *McDaniell,* 33 Tex., 705; *Goldsmith* v. *Herndon,* 54 Tex., 30; *Lyne* v. *Sanford,* 27 Am. St. Rep., 852; 44 S. W. Rep., 1002; *Lang* v. *Morey,* 40 Minn., 396; 12 Am. St. Rep., 748; *Pendleton* v. *Shaw,* 44 S. W. Rep., 527; *State* v. *Zance,* also 18 Tex., 101; 21 Tex., 404; 46 Tex., 345; 51 Tex., 97, and 20 Pickering, 67; 65 Vt., 84; 2 Woodward, 259; 40 Maine, 197; 78 Maine, 460; 79 Maine, 234; *United States* v. *Realty Co.,* 163 U. S., 427; *Barrow* v. *Milliken,* 74 Fed., 615; 41 U. S. Ap., 332; *United States* v.

*Weld,* 127 U. S., 51; *United States* v. *Borcherling,* 185 U. S., 223; *Vaugh* v. *Northrot,* 15 Pet., 1; *Walker* v. *United States,* 34 Ct. Cls. R., 345; *Van Waggener, Administrator,* v. *United States,* 31 Ct. Cls. R., 175; *Lynch, Administrator,* v. *United States,* 31 Ct. Cls. R., 62; *Labadie, Administrator,* v. *United States,* 32 Ct. Cls. R., 368; *Sample's Case,* 24 C. C. R., 422; *Durke's Case,* 28 C. C. R., 326; *Ingraham's Case,* 32 Ct. Cls. R., 147; *Stovall* v. *United States,* 26 Ct. Cls. R., 226; *Heffleblower* v. *United States,* 21 Ct. Cls. R., 228; *Heard* v. *Sturgess,* 146 Mass., 454; Littleton, Sec. 337; *Overton* v. *Sydall,* Popham, 120, 121; *Boyer* v. *Rivet,* 3 Bulstrode, 317, 321; *Bain* v. *Cooper,* 1 Dowling Pr. (N. S.), 11, 14; *Green* v. *Elkins,* 2 Atkin, 473, 476; *Duncan* v. *United States,* 18 Ct. Cls. R., 230; *Anderson* v. *United States,* 9 Wall., 56.

*Henry & Scudder,* for appellee, Henry, executor.

Counsel cite the following authorities in support of the decree of the court below:

*Meade* v. *United States,* 2 Ct. Cls. R., 224; *Comegys* v. *Vasse,* 1 Pet., 195; *Erwin* v. *United States,* 97 U. S., 392; *Milnor* v. *Metz,* 16 Pet., 221; *Briggs* v. *Walker,* 171 U. S., 466; *Grant* v. *Bodwell,* 78 Me., 460; *Pierce* v. *Stidworthy,* 79 Me., 234; 3 L. R. A., 462, note; *Green* v. *Elkins,* 2 Atk., 473, 476; *Williams* v. *Heard,* 140 U. S., 529; *Emerson* v. *Hall,* 13 Pet., 409; *Price* v. *Forrest,* 173 U. S., 140; *Blagge* v. *Balch,* 162 U. S., 439; 27 Am. & Eng. Ency. Law [1st ed.], 540; *United States* v. *Gillis,* 95 U. S., 407; *Goodman* v. *Niblack,* 102 U. S., 556.

CALHOON, J., delivered the opinion of the court.

Each of these cases is determinable on the same reasoning. In each the only question is whether or not the chancellor properly overruled appellant's demurrer to the separate bills filed by appellees. Each bill is to require the administrator d. b. n. c. t. a., the appellant, to pay complainants below, ap-

pellees here, a distributive share under the will of Haller Nutt, deceased. The first (No. 11,143) is based on the will of Mrs. Caroline Marble, sole heir of Carrie Nutt Forsythe, a deceased intestate daughter of Haller Nutt, which will of Mrs. Marble gave to appellees Elizabeth H. and Mary A. Forsythe "all the property, real and personal, of which I shall be at the time of my decease possessed, or to which I may be in any way entitled, and wherever the same may be situated." The second (No. 11,144) is based on a bequest in the will of Mary Ella Nutt, a daughter of Haller Nutt, of "all that I die possessed of to my sisters, Julia W. Nutt and Lillie Nutt Ward, also all interest in the claim against the United States government," etc. The third (No. 11,145) is based on the will of Haller Nutt, Jr., a son of Haller Nutt, which will gives his brother, S. P. Nutt, appellee, one-half of his share "of that certain claim No. 1,851 styled '*Julia A. Nutt, Executrix of Haller Nutt, deceased,* v. *the United States,* in the Court of Claims,' " and the other half the will gives to Annie Coleman, appellee. All three of these cases are here from a decree overruling demurrers to the bills. There is but one question in all the cases which we think worthy of any serious consideration, and that will develop from those facts stated in the bills and the agreement of counsel as to what, in addition, may be considered in arriving at a conclusion.

Haller Nutt, the common ancestor of the parties, was a citizen and resident of Natchez, Miss., but had very large possessions in the state of Louisiana, and was, for these parts, and at the time of the origin of the claim which is the cause of all these controversies, a man of very great wealth. During the war between the states he was known to be unmistakably not only an opponent of secession and of the Southern Confederacy, but absolutely devoted to the Union and the cause of the Federal government. He was so devoted, and to such an extent, that he welcomed the invasion of the Union armies. This was well known to Gen. Grant and all of his subordinate

officers.   In the operations of that commander against Vicks-
burg, the properties of Mr. Nutt in Louisiana were occupied
by the United States army, but put under safeguards.   These
safeguards were, because of his well-known loyalty, ordered by
Gen. Grant, Gen. Sheridan, Gen. McPherson, and Gen. Gresh-
am.   According to Brig. Gen. McKee, who commanded the
first of the Union forces to enter Natchez, Mr. Nutt "was
the first man to step forward and welcome" them.   By the
reports of committees of the United States Senate appointed to
investigate this very claim, propounded first in 1866, by Julia
A. Nutt, widow of Haller Nutt, and then executrix of his will,
it is shown that the Federal army was compelled, by necessity,
to disregard the safeguards, and appropriate supplies of enor-
mous value.   It is shown that, if damage by destruction of
property could be considered, such as houses, gins, 750 bales of
cotton, etc., the loss was $1,000,000 or more.   But, excluding
these, and considering only quartermaster and commissary sup-
plies, it is shown that the claim largely exceeded $100,000.
In all, there have been four payments on this since it was
first presented from 1866 to date—the three first to the estate
of Haller Nutt, and distributed as assets; and the last, $89,-
999.89, recently paid to the administrator d. b. n. c. t. a. of
that estate, and which is the subject of the present litigation.
It is important to note the language of the act making the
appropriation of this last-named sum.   It appears in an omni-
bus appropriation bill to several hundred claimants, some to
individuals named, some to "heirs," some to "next of kin,"
etc., and is in these words: "To James C. Williams, adminis-
trator of Haller Nutt, deceased, of Adams county, $89,999.89"
—figures written.   Williams died, and John K. Nutt is now the
administrator, and the children of Haller and Julia A. Nutt,
through the administrator, contend that because they happen
to be now alive they should have the whole sum to the ex-
clusion of the legatees of the three children who happened to
die before this last payment was made.   We do not think so.

The claim was in prosecution for thirty years, recognized as just by the great military leaders, by the quartermaster general, and great statesmen on congressional committees, and certain it is, in the line of the reasoning in *Williams* v. *Heard,* 140 U. S., 529, 11 Sup. Ct., 885 ; 35 L. ed., 550 ; and *Price* v. *Forrest,* 173 U. S., 427–429 ; 19 Sup. Ct., 434 ; 43 L. ed., 749, that the government was under the highest moral obligation to pay it, and this is recognized. If the matter were between individuals, the right of recovery would have been clear. This is not a case where the appropriation was to "heirs," as in *Emerson* v. *Hall,* 13 Pet., 409 ; 10 L. ed., 223, or to "next of kin," as in *Blagge* v. *Balch,* 162 U. S., 439 ; 16 Sup. Ct., 853 ; 40 L. ed., 1039 ; nor is it a case where no appropriation has yet been made, as in the case of *Campbell* v. *United States,* 28 Ct. Cls., 512. Here the appropriation has been made, and made specifically to the administrator with the will annexed, and must be intended to be designed as estate assets for distribution to creditors, and, when they are paid, to heirs living and representative of heirs dead, according to the laws of distribution.

*Affirmed.*