### ERWIN *v.* UNITED STATES.

1. Where cotton was captured by the military forces of the United States and sold, and the proceeds were paid into the treasury, the claim of the owner against the government constitutes property, and passes to his assignee in bankruptcy, though, by reason of the bar arising from the lapse of time, it cannot be judicially enforced.

2. The act of Congress of Feb. 26, 1853 (10 Stat. 170), to prevent frauds upon the treasury of the United States, applies only to cases of voluntary assignment of demands against the government. The passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which it aimed.

APPEAL from the Court of Claims.

In January, 1873, the appellant brought suit in the Court of Claims, under the Captured and Abandoned Property Act, to recover the proceeds of two hundred and eighty-three bales of cotton, alleged to have belonged to him, and to have been seized and taken from his possession in Savannah, in February, 1865, by the military forces of the United States, and to have been sold by the agent of the Treasury Department, and

the proceeds paid into the treasury.  After issue had been joined in the suit, and evidence on behalf of the claimant had been taken, but before a hearing was had, *Haycraft* v. *United States* (22 Wall. 81) was decided by this court; in which it was held that the Court of Claims had no jurisdiction to hear and determine any claim arising under the provisions of that act, unless suit upon the same was commenced within two years after the suppression of the rebellion.  It had been previously decided that, within the meaning of the act, the rebellion was to be considered as suppressed throughout the whole of the United States on the 20th of August, 1866, the day on which the President, by his proclamation, had declared it suppressed in Texas, the last of the States in insurrection.  *United States* v. *Anderson*, 9 Wall. 56.

Upon learning of the decision mentioned, the appellant petitioned Congress for relief; and, in compliance with his petition, a statute was passed, which became a law in February, 1877, authorizing the Court of Claims to take jurisdiction of his claims under the Captured and Abandoned Property Act; " which claims," said the statute, " were, by accident or mistake of his agent or attorney, and without fault or neglect on his part, as is claimed, not filed within the time limited by said act."  19 Stat. 509.

After its passage, the appellant filed in the Court of Claims an amended petition, setting forth the act, and averring that Congress intended by it to confer upon the court jurisdiction to hear and determine his claims, as stated in his original petition.

It appears from the findings of the Court of Claims that in December, 1864, the appellant was possessed of the cotton described in his petition; that it was taken from his possession by the military forces of the United States and sold, and the proceeds thereof paid into the treasury; that in December, 1868, he was a member of the firm of Erwin & Hardee, of Savannah; that during this month that firm became insolvent, and presented a petition in bankruptcy to the District Court in Georgia; that in due course of proceedings the partners were adjudged bankrupts; that an assignee of their estate was appointed, and that their property was passed to the assignee.  The schedule

of the individual property of the appellant annexed to the petition set forth among his assets " a claim on the United States government for three hundred and eighty-two bales of cotton, captured by General Sherman, in Savannah, in December, 1864." In March, 1872, the assignee presented a petition to the judge of the District Court, stating that he had in his possession a great many outstanding debts and demands belonging to the estate of the bankrupts, which could not be collected without inconvenient delay, and praying for leave to sell at auction certain notes and accounts mentioned, among which was this item : " All uncollected open accounts on the books." The court gave the assignee leave to sell at auction "such notes, accounts, and other debts" due to the estate as in his judgment would be for the interest of the creditors of the bankrupts; but as he and the creditors afterwards came to the conclusion that the property, if sold as proposed, would bring a mere nominal amount, no such sale was made, and in December, 1872, he accepted an offer of $2,500, made by the appellant, for the assets, exclusive of the notes of one Henry Schaben. The assets, with that exception, were accordingly sold to him, and a memorandum given to him by the assignee, acknowledging the receipt of the money " in full for all the remaining assets of the late firm of Erwin & Hardee." It also appears from the findings that the copy of the bankrupts' schedules, prepared by the register in bankruptcy for the use of the assignee, contained a sheet setting forth as an asset the claim mentioned against the United States for three hundred and eighty-two bales of cotton; but that the sheet was removed by some person unknown, and that the assignee had no personal knowledge that such an asset existed when he made this sale to the appellant.

The Court of Claims dismissed the petition, and from its decision Erwin appealed to this court.

*Mr. John J. Weed* and *Mr. Enoch Totten* for the appellant.
*Mr. Assistant-Attorney-General Smith, contra.*

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The purpose of the statute passed for the relief of the appel-

lant, as is manifest on its face, was to remove the bar of the Captured and Abandoned Property Act, which had arisen without his fault, or rather to confer jurisdiction upon the Court of Claims over his case, which otherwise would not have existed. It was not intended to enlarge or affect his title to the claim, or to change his position in court from what it would have been had he instituted his suit within the two years prescribed by that act. His claim must, therefore, be considered like the claims of other suitors, both with respect to its original validity as a demand against the government and with respect to his title. If the proof fail in either of these particulars, no recovery can be had.

There is no question made as to the appellant's ownership of the cotton at the time of its seizure, or as to its proceeds being in the treasury of the United States; nor is any point raised against his status in court from his former connection with the rebellion as an officer in the Confederate army, the disability thus created having been removed by the President's proclamation of pardon and amnesty.

The point in dispute relates to the validity of his title. His contention is, 1st, that his claim against the United States for the proceeds of the cotton never passed to the assignee in bankruptcy; and, 2d, that if it did thus pass, he afterwards became the owner of it by purchase of the assets at the sale mentioned.

Upon the first point, the argument of the appellant is substantially this: That the claim, at the time the petition in bankruptcy was filed, did not constitute an enforceable demand against the government, and was not, therefore, in its nature assignable property; and that if the claim constituted a demand against the government in the nature of property, it was incapable of assignment, under the act of Congress of Feb. 26, 1853 (10 Stat. 170), and the decision of this court in *United States* v. *Gillis*, 95 U. S. 407; and that in either view the appellant stands in his original position before proceedings in bankruptcy were instituted, with his rights or equities respecting such claim unaffected by them.

This argument is unsound. When the appellant filed his petition in bankruptcy, his claim against the government was property, though of uncertain value. It was a claim for the pro-

ceeds of goods which once belonged to him, and of the possession of which he has been deprived by the action of the government. Whether this was done rightfully or wrongfully does not affect the character of the claim as property, though it may affect its validity and value. Claims for compensation for the possession, use, or appropriation of tangible property constitute personal estate equally with the property out of which they grow, although the validity of such claims may be denied, and their value may depend upon the uncertainties of litigation, or the doubtful result of an appeal to the legislature. A demand of a bankrupt, which is outlawed, must go to the assignee; for contingencies may arise in many ways which will give value to it. Demands against the government, if based upon considerations which would be valid between individuals, such as services rendered or goods taken, are property, although there be no court to investigate and pass upon their validity, and their recognition and payment may depend upon the caprice or favor of the legislature.

In *Comegys* v. *Vasse*, reported in 1 Peters, this court said, speaking through Mr. Justice Story, that it might, in general, be affirmed that vested rights *ad rem* and *in re*, possibilities coupled with an interest, and claims growing out of and adhering to property, will pass by assignment; and it was there held that a claim against the Spanish government, by a bankrupt, for damages arising from the capture of vessels and cargoes, of which he was the underwriter, and which were abandoned to him, passed to his assignee in bankruptcy. " The right," said the court, " to indemnity for an unjust capture, whether against the captors or the sovereign, whether remediable in his own courts, or by his own extraordinary interposition and grants upon private petition, or upon public negotiation, is a right attached to the ownership of the property itself, and passes by cession to the use of the ultimate sufferer;" and is in its nature capable of assignment to others. The Bankrupt Act of 1800, under which the case arose, provided that " all the estate, real and personal, of every nature and description, to which the bankrupt might be entitled, either in law or equity," should go to his assignee; and the court held that the words were broad enough to cover every description of

vested right and interest attached to and growing out of property; that under them the whole property of a testator would pass to his devisee, and whatever an administrator could take in case of intestacy would go to him. The language of the act under which the appellant here filed his petition in bankruptcy is equally comprehensive as to the property of a bankrupt which shall go to his assignee. It declares that all his estate, real and personal, and all his rights in equity and choses in action, shall vest in the assignee; and these terms are broad enough to embrace any claim the party may have against the government for property taken belonging to him. Rev. Stat., sects. 5044, 5046.

The act of Congress of Feb. 26, 1853, to prevent frauds upon the treasury of the United States, which was the subject of consideration in the *Gillis Case*, applies only to cases of voluntary assignment of demands against the government. It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees, or assignees in bankruptcy are not within the evil at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims.

Upon the second point, that the claim in controversy was purchased by the appellant at the private sale of the assignee, we think the evidence insufficient. It appears from the copy of the schedules of the bankrupts' property, prepared by the register for the use of the assignee, that the sheet showing the claim against the United States for three hundred and eighty-two bales of cotton had, in some unexplained way, been removed, so that he had no knowledge of the existence of the claim when he sold the remaining assets to the appellant. The receipt given by him shows that he considered that he was selling the assets of the firm only, and not of either of the separate partners. We are clear that it was not his intention to sell the claim against the government. There was a want of concurrence of minds to any such transaction, which was essential to give it validity.

*Judgment affirmed.*