HENRY KINGSBURY, in equity, *vs.* CHARLES P. MATTOCKS, assignee in bankruptcy.

Cumberland.    Opinion February 18, 1889.

*Alabama Claims.    War Premiums.    Assignee in Bankruptcy.    Act of Congress, March 2, 1867; June 5, 1882.*

In April 1863, the plaintiff paid war premiums on certain vessels insured against capture or destruction by confederate cruisers. In May 1868, he was adjudicated a bankrupt, under the act of Congress of March 2, 1867, and the defendant was appointed his assignee. Under the act of Congress of June 5, 1882, by which the court of commissioners of Alabama Claims was

re-established, he made application to that court for reimbursement for the premiums so paid. Subsequently, by reason of a rule of that court, the defendant became a party to that proceeding, prosecuted it to final judgment and received the proceeds thereof. The only question presented is, whether the defendant holds that sum in trust for the plaintiff, or for his creditors in bankruptcy.

*Held*, that creditors can hold only such property, &c., as passed by the assignment. At its date, this claim was not in existence, either as property, or the representative of property, the same as were claims for property destroyed. It never became such until the act of June 5, 1882, and therefore did not pass by the assignment to the assignee.

ON REPORT. Bill in equity, heard on bill, answer and agreed statement.

This was a bill in equity brought by Henry Kingsbury, against his assignee in bankruptcy, to determine the question whether the money collected from the Alabama court by the assignee, upon a judgment therein obtained for war premiums, paid by the plaintiff, belonged to him or his creditors.

The material facts are stated in the opinion.

*Clarence Hale*, for plaintiff.

Adjudication of Alabama court not conclusive between parties. It leaves the rights of claimants to their own courts.

Money did not pass to the assignee. *Heard* v. *Sturgis*, 146 Mass. 545; *Brooks* v. *Ahrens*, 68 Md. 212; *Tafts* v. *Marsily*, 47 Hun. 175; U. S. Rev. Stat., § 5046.

Payment of war premiums created no right against the U. S. Reimbursement to parties, an act of generosity and bounty by the government. Claims which have passed to assignees were for property, cases of spoliation and unjust capture. *Comegys* v. *Vasse*, 1 Pet. 193; *Pierce* v. *Stidworthy*, 79 Maine, 234; *Leonard* v. *Nye*, 125 Mass. 455; *Grant* v. *Bodwell*, 78 Maine, 460; *Williamson* v. *Colcord*, 1 Hask. 621. Recovery of judgment for war premiums proof that there was no injury to property.

Claims for war risk insurance excluded by Geneva Arbitrators. Protocols 5, 6 and 7; Messages and Documents, State Department, part 2, vol. 4, 1872-3, pp. 19 to 22. After paying first class claims, Congress did not intend by the act June 5, 1882, distributing the remaining $9,500,000 to discharge a debt of the

government. It was the application of a surplus, to a praise-worthy object, a meritorious action rewarded. *Emerson's Heirs* v. *Hall,* 13 Pet. 221. If regarded as a claim, Congress would have considered how far shippers had reckoned war premiums in the increased price of their goods.

As claims against private persons, they would impose no legal obligation,—being voluntary payments for another's benefit, &c. *Warren* v. *Whitney,* 24 Maine, 561; *Dodge* v. *Adams,* 19 Pick. 429; *Hackett* v. *Bradley,* 7 Conn. 57. But war premiums were paid not for another's but the party's own benefit. That war premium men asked for a gratuity, raised no assignable claim. Shep. Touch. 322, 328; 4 Kent Com. 206. They had nothing but an unassignable hope of future generosity. *Burnand* v. *Rodocanachi,* 7 App. Cas. 333, 336. Test of assignability is the nature of the claim, not the fact that such a claim was made. *Emerson* v. *Hall, supra; Erwin* v. *United States,* 97 U. S. 392.

No claim passed to assignee, the payment under the act of 1882 being merely an act of generosity of the government. Assignees succeed to bankrupts' rights as of date of bankruptcy. Executors represent the person of their testator, hence decisions of the court relating to claims growing out of capture in respect to estates of deceased persons, do not apply to estates in bankruptcy.

Equity proper remedy. R. S., c. 77, § 6, par. 4 and 7; *Tappan* v. *Deblois,* 45 Maine, 122; *McLarren* v. *Brewer,* 51 Id. 402; (defendant a trustee), Story Eq. Jur., vol. 2, p. 434; *Platt* v. *Bright,* 9 N. J. 148.

*C. P. Mattocks,* for defendant.

The money, received by the defendant, being in the nature of, and not distinguishable in principle from "indemnity for an unjust capture," passed to the defendant, as a part of said bankrupt estate. *Comegys* v. *Vasse,* 1 Pet. 193.

Assignment is sufficient in form, although a different form of assignment for such claims may have been provided by law. *Leonard* v. *Nye,* 125 Mass. 455.

The decision of a court which makes a distinction between, or divides into classes, claims provable under the Acts of Congress of June 23, 1874, and June 5, 1882, is supererogative of the work

already done by Congress, which, in the Acts referred to, places all such claims upon exactly the same basis, as being for injuries actually received, incurred by the same cause, and based upon a certain fixed value lost by the claimant, either by the destruction of property, or the enforced payment of money. The amount of such loss, in either case, to be proven in the same manner, and any concession made by the arbitrators, to prevent delay in the arbitration, in no way controls the scope of the acts of Congress making the distribution. Opinion by French, J., Ct. Com'rs Alabama Claims. Dissenting opinion, Field, J., in which Allen, J., concurs, in *Heard* v. *Sturgis*, cited by plaintiff.

This court has already decided that claims provable under the act of June 5, 1882,—which is the act under which the sum in controversy was received,—pass by the residuary clause in a will. *Grant* v. *Bodwell*, 78 Maine, 460 ; *Pierce* v. *Stidworthy*, 79 Maine, 234.

And if such claims pass by will, they are clearly distinguishable from the claim considered in *Emerson's Heirs* v. *Hall*, 13 Pet. 409, in which the sum in controversy was a mere gift or donation, and pass to the assignee in bankruptcy. *Leonard* v. *Nye*, 125 Mass. 455.

Since the decision in *Comegys* v. *Vasse*, 1 Pet. 193, in 1828, it has been the settled law of the land, and so held in the state and federal courts, that sums received by treaty or arbitrament with foreign nations for unjust seizure of, or injuries to the property of our own citizens, as under the treaty with Spain of February 22, 1819, or that with Great Britain, concluded May 8, 1871, are of the estate of the beneficiaries even before any method of proof has been established; that such sums are in no way gifts or donations, and pass to executors, administrators or assignees in bankruptcy. In the rare cases in which the attempt has been made to change this uniform current of decisions, and to characterize a part of such awards as gifts, and another part as a part of the estate of the claimants ;—such attempt has always involved the necessity of trenching upon ground already fully covered by the several acts of Congress named making such distributions, and the reasoning made necessary by such attempt, tested by

itself, leads to no safe tangible ground, but becomes so dissipated as followed out, that the old maxim, *de minimis non curat lex*, well applies.

The complainant can have the decree he asks, only by making a distinction between money paid by the treasury for property destroyed and money paid in refunding insurance premiums enhanced by war risks;—a distinction, it is submitted that was never contemplated by Congress, which is nowhere even suggested in the body of any act of Congress; and a distinction unwarranted by natural justice. Much was due to American merchants who kept the flag of our merchant marine afloat in troublous times of the war, and it was but natural justice that they should be in some way relieved from the burdens imposed upon them; but it would be difficult to see why money paid for the hull or rigging of a ship destroyed, is more sacred in its character, although lost to the owner, than money paid for enhanced war premiums and equally as hopelessly lost.

DANFORTH, J. In April 1863, the plaintiff paid the sum of $1,233.12 as war premiums on certain vessels insured against capture or destruction by confederate cruisers. In May 1868, he was adjudicated a bankrupt and the defendant was appointed his assignee. Under the act of Congress of June 5, 1882, by which the Court of Commissioners of Alabama Claims was re-established, he made application to that court for a reimbursement of the premiums so paid. Subsequently by reason of a rule adopted by the court the defendant as assignee came in, prosecuted the claim to judgment and on September 15, 1886, received thereon the sum of $662.84.

The only question involved is, whether the defendant holds that sum in trust for the plaintiff, or as assignee for the creditors in bankruptcy. The fact that it was recovered in his name as assignee can have no effect upon the decision, for, that was the result of adjudication by the commissioners beyond their jurisdiction and therefore not conclusive.

It must now be considered as well settled, that claims allowed by that court under the act of June 23, 1874 or June 5, 1882 and

in accordance therewith, for the capture or destruction of property by the confederate cruisers, are such property as would and did pass by an assignment in bankruptcy bearing date after the capture or destruction, and before the allowance, or more accurately stating it, the claim itself passed by the assignment and the amount allowed referred back to the loss, took the place of the property so lost and goes where that would have gone. *Comegys* v. *Vasse*, 1 Peters, 193; *Leonard* v. *Nye*, 125 Mass. 455; *Grant* v. *Bodwell*, 78 Maine, 460; *Pierce* v. *Stidworthy*, 79 Maine, 234. In these cases the principles involved and cases decided are so exhaustively discussed as to leave nothing to be added. In *Comegys* v. *Vasse*, which is the leading case in this country, Mr. Justice Story states the ground of assignability thus, "vested rights *ad rem and in re*, possibilities coupled with an interest, and claims growing out of, and adhering to property, may pass by assignment."

This description, presumably, was not intended to include all classes of property assignable, but it clearly goes to the utmost limit of that represented by such claims as are the subject matter of the cases cited. It may, therefore, be safe to assume, that unless the claim under consideration comes within the above description it was not assignable, and the case at bar would be clearly distinguishable from those relied upon in defense.

The origin of the claim shows its nature. It comes from a simple contract between the plaintiff and his insurers. He paid them his money and as a full consideration, received their contract of indemnity in case of a loss. There were no expectations for the future, no foundation for any hope to get his money back, unless there was a loss. It was only a loss, to or under which, he could have any claim, or which could give rise to any "possibilities coupled with an interest;" it was only a destruction, or capture of the property insured, by the confederate cruisers, which could give rise to any claims "growing out of, and adhering to property." Here was no loss, or destruction, or capture of the property. Hence the whole thing began and ended with the contract. There was, indeed, an increase in the premium paid consequent upon the fact that cruisers were afloat, but so far as

appears the vessels were not rendered less valuable permanently, or their voyages less profitable by that increase.

Besides, if this claim was in any sense a debt, so as to be assignable, as such, there must necessarily be a debtor. Here there is, or was at the time of the bankruptcy, none. There is no pretense that there was any claim upon the United States government, and it is conceded, that in whatever it did in behalf of the claimants, was in pursuance of its duty as agent for, or protector of, its subjects. As such, it presented this claim for allowance to the government of Great Britain. Upon objection being made, it was decided that by the international law that government was not liable and the claim was withdrawn. This decision, if not conclusive was satisfactory to the contracting parties, and clearly in accordance with the law applicable.

Thus, we are brought to the conclusion that at the time of the plaintiff's bankruptcy, this claim was not assignable, was not in fact an existing right to any description of property, and therefore did not pass under the assignment to the defendant as assignee.

But it is claimed, that by the subsequent proceedings in regard to the claim it is made assignable, and that these proceedings should relate back to the beginning and thus carry the claim to the assignee.

It may be true, that the claim is now assignable. But on what principles of law or equity the result contended for should follow is certainly not apparent. The assignment covers only property existing at its date. The creditors are entitled to so much and to no more. In all the cases relied upon, the corner stone upon which the decision rests, is that at the time of the assignment the claim was assignable property and as such passed by the assignment. If this claim is now assignable it is by virtue of the act of Congress of June, 1882. There was nothing growing out of the original payment of the insurance money, any more than in the payment of money for any other purchase, to which the creditors were entitled. If they get this claim, they get something to which they were not and are not at all entitled.

It is evident, from the act referred to and the circumstances

under which it was passed, that Congress did not so intend. It is significant that the act does not, as in the prior one, give the amount awarded to assigns; but this may not be conclusive.

The board of arbitration allowed no amount whatever, for claims of this class, but a sum in gross for damages caused by the capture or destruction of property. The sum allowed was accepted in full for such losses. It then became the duty of the government to provide for such losses. This it did, and the balance left belonged to it as much as any money in its treasury. With this money it saw fit to pay in part, or all, as the amount might be found sufficient, of the sums paid for enhanced premiums. The act of 1882 was passed for this purpose. It was not founded upon any legal or equitable right or claim, nor was it an acknowledgment of such, but was purely and simply a voluntary act, not only as a government not suable, but such would have been its effect as between individuals. *Emerson's Heirs* v. *Hall*, 13 Peters, 409. But whether that statute confers a gratuity, or is the creation of a debt, the result is equally fatal to the defense in this case.

The only conflicting decision to which our attention has been directed is that of the commissioners, which rests very largely upon the decisions relied upon in the defense of this case. As we have seen, those cases differ materially and are not authority upon any question involved in this. On the other hand the conclusion here reached, is sustained by *Brooks* v. *Ahrens*, 68 Md. 212; *Taft* v. *Marsily*, 47 Hun. 175, and *Heard* v. *Sturgis*, 146 Mass. 545, in which, especially the last, will be found a very exhaustive discussion of the principles involved on both sides.

*Bill sustained.*

PETERS, C. J., WALTON, VIRGIN, EMERY and HASKELL, JJ., concurred.