Weldon, J.,
delivered the opinion of the court:
The matter embraced in this proceeding was referred to the the court by the Committee on War Claims of the House of Kepresentatives on the 1st day of March, 1887, under the provisions of the Act of March 3, 1883.
On March 11,1889, the decedent, from whom it is alleged the property was takeu, was found loyal, and this case is now pending on its merits.
Preliminary to the consideration of the claim on its merits, the Assistant Attorney-General makes the following motion:
“The defendants, by John B. Cotton, Assistant Attorney-General, now comes and moves the court to dismiss the petition, because the following facts disclosed by the record show the court to be without jurisdiction to consider the same, viz:
“ First. That T. C. Dockery, administrator of William Sloan, is not the owner of the claim set up in the petition, but it belongs to and is the property7 of the assignee in bankruptcy of William Sloan.
“ Second. That the claim never has been presented by the owner thereof or anyone for him to the Commissioners of Claims, and hence was barred by the laws of the United States at the time of the passage of the Act of March 3, 1883, known as the Bowman Act, under the provisions of which it has been sent to this court.”
The substance of this motion is, that at and before the presentation of the claim to the Commissioners of Claims the decedent had become a bankrupt under the provisions of the Act of 18C7.
It is contended by the counsel for the Government that inasmuch as the decedent was then in bankruptcy, all claims and rights of property had by virtue of the provisions of the Bankrupt Act passed to his assignee for the benefit of creditors.
It was the purpose and policy of said act to pass to the legal ownership of the assignee all legal and equitable rights and all the property of an insolvent debtor, so that the estate might be distributed for the benefit of the creditors of the bankrupt. The law required the utmost good faith upon the part of the debtor in surrendering all choses in action and property7, both real and personal, to the custody of the court.
If the claim now made was of such a character, it might be that under the bankrupt law there became a complete divesti *150 ture of the title of the decedent, and the complete investiture of title in tbe assignee.
But is it a claim having the essential elements of being either legal or equitable within the meaning of the law.
It is insisted that the claim for stores and supplies is analogous to a claim for the proceeds of captured or abandoned property, under the Act of March 12,1863.
It was held by this court in the cases of Burke & Tait (13 C. Cls. R., 231):
“The assignment in bankruptcy passes to the assignee the claim of the bankrupt for the proceeds of captured cotton. The assignee can appear and support his claim in his own name. An assignee in bankruptcy may sell and assign such claim for proceeds of captured cotton, and the purchaser may maintain an action therefor in his own name.”
The same doctrine is announced by the Supreme Court in the case of Erwin v. The United States (97 U. S. R., 392).
Captured and Abandoned Property Act originated and enforced a right legal in its character, and the right thus secured to loyal citizens of the South became, and was at the time of the enactment of the bankrupt law, a subsisting chose in action, valuable and capable of legal recognition.
The property of the individual citizen had been taken and sold, and its proceeds paid into the Treasury of the United States, to be paid to the loyal owner upon a judgment of the Court of Claims, subject to an appeal to the Supreme Court.
Under the provisions of said law, the Supreme Court decided that the United States were trustees, holding the money for the benefit of the loyal owner.
In proceedings of this kind under the Bowman Act, we are not dealing with legal or equitable demands against the Government in the sense of the law; but with questions of fact, applicable to the wise discretion of Congress.
As the basis of the exercise of that discretion we pass upon a very narrow range of legal questions; simply our jurisdiction under said act, and legal questions affecting the competency of evidence introduced by either side in the development of the facts of the controversy.
*151 The second clause of said law provides:
“ When the facts shall be found, thee ourt shall not enter a judgment thereon, but shall report the same to the committee orto the House by which the case was transmitted for its consideration.”
Ordinarily we do determine in cases of this character, as a matter of fact, whether the claimant was the owner of the property; but wherethat question is of a mixed character, depending on a question of law and fact, we report the entire facts, so that Congress may determine its course of action.
The claim was presented to the Claims Commission by the decedent; and that presentation by him, in the judgment of the court, is sufficient in legal effect to prevent the operation of that clause of the statute which provides: “ Nor shall said court have jurisdiction of any claim against the United States which is now barred by virtue of the provisions of any law of the United States.”
The presentation made to the Claims Commission is sufficient, in legal effect, to enable the administrator to prosecute his suit under the reference of the committee by which it was transmitted to this court.
We report the fact of bankruptcy, in connection with other material facts, to Congress, so that they may determine upon grounds of public policy what shall be done in the premises.
The order of the court is that the motion to dismiss be overruled.
Davis, J., was not present, and took no part in the decision.