## HARLAN v. ARCHER (two cases) *
### Nos. 3869, 3893.

Circuit Court of Appeals, Fourth Circuit.
Oct. 10, 1935.

*Writ of certiorari denied 56 S. Ct. 383, 80 L. Ed. ——.

NORTHCOTT, Circuit Judge, dissenting.

676

PARKER, Circuit Judge (after stating the facts as above).

The question as to whether the claim of the bankrupt' here in controversy passed to his trustee in bankruptcy depends upon whether it falls within the provisions of section 70a of the Bankruptcy Act (11 USCA 110 (a), which relates to the vesting of the title to the property of the bankrupt in the trustee. The pertinent provisions of that section are as follows: "(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him; * * * and (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

The question in the case, then, is narrowed to this: Did the bankrupt, at the time of the filing of the petition in bankruptcy, have any right of property, subject to transfer or to levy and sale under judicial process, with respect to the matters involved in the claim which he is now pressing before Congress and the Court of Claims, or did he have any right of action, whether arising upon contract or from the unlawful taking of or injury to property, with respect to such matters? If he had such right of property or right of action, it passed to his trustee in bankruptcy, even though he may have been unable to enforce it because the government was not subject to suit with regard thereto. Williams v. Heard, 140 U. S. 529, 11 S. Ct. 885, 35 L. Ed. 550; Phelps v. McDonald, 99 U. S. 298, 25 L. Ed. 473; Erwin v. U. S., 97 U. S. 392, 24 L. Ed. 1065; Clark v. Clark, 17 How. 315, 15 L. Ed. 77; Comegys v. Vasse, 1 Pet. 193, 7 L. Ed. 108. If, on the other hand, he had no such right of property or right of action and his claim is a mere appeal to the generosity of Congress to exercise legislative discretion in his behalf, where there is no legal or equitable obligation on the part of the government, such claim did not pass to the trustee. Heirs of Emerson

Lawrence W. Hecht, of Baltimore, Md., for appellant.

Horace S. Whitman, of Washington, D. C. (Morris Rosenberg, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

v. Hall, 13 Pet. 409, 413, 10 L. Ed. 223; U. S. v. Borcherling, 185 U. S. 223, 232, 22 S. Ct. 607, 46 L. Ed. 884; Blagge v. Balch, 162 U. S. 439, 16 S. Ct. 853, 40 L. Ed. 1032; In re Ghazal (C. C. A. 2d) 174 F. 809; Suskin & Berry v. Rumley (C. C. A. 4th) 37 F.(2d) 304, 68 A. L. R. 768; In re Wetmore (C. C. A. 3d) 108 F. 520; In re Nabors (D. C.) 280 F. 943; Dockery's Case, 26 Ct. Cl. 148; Campbell's Assignee v. U. S., 28 Ct. Cl. 512; Remington on Bankruptcy § 1199.

The distinction between claims against the government which are assignable and pass to the trustee in bankruptcy, and those which are not assignable and do not pass, was well expressed by the Court of Claims in Campbell, Assignee, v. United States, 28 Ct. Cl. 512, 513, in the following language:

"Three things concerning the assignment of claims against the Government may be regarded as well settled:

"(1) That such claims as are choses in action upon which a suit can be maintained as a matter of legal right, if there be a jurisdiction, and in which 'there is no element of a donation in the payment ultimately made' (Phelps v. McDonald, 99 U. S. 298 [25 L. Ed. 473]), pass in bankruptcy and may be prosecuted by the assignee or by the purchaser in bankruptcy proceedings. McKay's Case (27 Ct. Cl. 422); Burke's Case (13 Ct. Cl. [231] 241).

"(2) That the title to what is known as abandoned and captured property, not having been divested by capture, a claim for the proceeds in the Treasury is a cause of action which passes in bankruptcy, although no jurisdiction exists at the time in which it can be prosecuted. Klein's Case (13 Wall. 128 [20 L. Ed. 519]); Erwin's Case (97 U. S. 392 [24 L. Ed. 1065]).

"(3) That a mere expectancy, a claim founded on no legal right known to courts of law or equity, a claim which is but an appeal to the clemency of Congress for the redress of an injury, where there is no obligation on the part of the Government, and the granting of relief is purely a matter of legislative discretion, can not be regarded as property and does not pass in bankruptcy. Dockery's Case (26 Ct. Cl. 148); Heard v. Sturgis (146 Mass. 545 [16 N. E. 437]); Taft v. Marsily (120 N. Y. 474 [24 N. E. 926]); Brooks v. Ahrens (68 Md. 212 [12 A. 19]); Kingsbury v.

Mattocks (81 Me. 310 [17 A. 126, 3 L. R. A. 460]); Estate of Moore v. U. S. (26 Ct. Cl. 254); Heirs of Emerson v. Hall (13 Pet. 409, 415 [10 L. Ed. 223])."

In Emerson v. Hall, supra, 13 Pet. 409, 412, 10 L. Ed. 223, it appeared that one Emerson had taken part in the condemnation of a vessel engaged in the slave trade, but that a decree of forfeiture in his favor had been reversed by an appellate court which held that the United States government was entitled to the proceeds of the forfeiture. Subsequently an act of Congress, passed for the relief of Emerson, gave to his heirs the funds to which he would have been entitled under the original decree. The question was raised whether such funds constituted assets for the payment of debts in the hands of the heirs; and the Supreme Court, after distinguishing the case from that involved in a spoliation claim against a foreign government, answered the question in the negative, laying down the rule which we think applicable here as follows: "A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned. It does not go to the administrator as assets. It does not descend to the heir. And if the government, from motives of public policy, or any other considerations, shall think proper, under such circumstances, to make a grant of money to the heirs of the claimant, they receive it as a gift or pure donation. A donation made, it is true, in reference to some meritorious act of their ancestor, but which did not constitute a matter of right against the government."

In the case at bar it cannot reasonably be said that Archer has ever had any right of property or right of action with respect to the matters involved in the claim which he is now pressing before Congress and the Court of Claims. Such claim is not founded on any right cognizable either at law or in equity. It is not only not enforceable against the government, but would not be enforceable against a private corporation if it occupied the position of the government with respect thereto. That upon which it is based hardly rises to the dignity of an expectancy, but is rather a mere hope that Congress will make the claimant a donation on account of the loss of business which he has suffered as a result of the acquirement of the property of

other persons by the government and the change in the use of that property. Such acquirement of the property of others is clearly too remote from the loss of business by the claimant to be considered the proximate cause of such loss or to give rise to a right as against anyone.

■ It should be remembered that the government did not take any property of the bankrupt. It did not damage any property of his by what it did on the property of others which it did take. All that it did was to acquire by purchase and condemnation lands of other persons which it used for military rather than for agricultural purposes; and bankrupt's only basis of claim is that, as a result of this, tomatoes were not raised on the land by the owners and could not be acquired by him for the purpose of canning. It is too clear for argument that this furnishes no legal or equitable basis for a claim against any one; for the owners of the lands were under no obligation to plant them in tomatoes or to sell their product to bankrupt even if they did so.

■ And nothing was added to the status of the claim by the representations of Colonel Ruggles. His powers with respect to the acquisition of the land were limited by the act of Congress under which it was acquired; and, since they were thus limited, nothing that he said with respect to compensation for loss of business could have given rise to any rights against the government or any one else. Wilber Nat. Bank v. U. S., 294 U. S. 120, 55 S. Ct. 362, 79 L. Ed. 798; Utah Power & Light Co. v. U. S., 243 U. S. 389, 409, 37 S. Ct. 387, 61 L. Ed. 791; Pine River Logging Co. v. U. S., 186 U. S. 279, 291, 22 S. Ct. 920, 46 L. Ed. 1164.

The question as to whether there is any right, as distinguished from remedy, against the government growing out of the injury to business resulting from the taking of land, is fully covered, we think, by the decision of the Supreme Court in Mitchell v. U. S., 267 U. S. 341, 45 S. Ct. 293, 294, 69 L. Ed. 644. In that case recovery was sought for the destruction of business conducted on land of the claimant which had been taken and for which compensation had been paid by the government. No compensation had been paid for the destruction of the business, however, and the object of the suit was to recover on that account. The Supreme Court de-

nied recovery, not merely upon the ground that no authority had been given to sue the government, but also because the injury to the business was a mere "unintended incident of the taking of land," saying that the setttled rules of law precluded consequential damages for loss of business or its destruction being considered in determining the value of the land taken, and that no recovery therefor could be had subsequently as for a taking of the business. See 267 U. S. page 345, 45 S. Ct. 293, 69 L. Ed. 644. Certainly, if there is no right in the owner of land to have the value of such business considered in determining compensation for the taking of the land, there is no right where the business is not conducted on the land taken and is owned by different persons from those who own the land.

In Erwin v. U. S., supra, 97 U. S. 392, 396, 24 L. Ed. 1065, the principle is laid down that demands against the government are property and pass by assignment as such, even though there be no court to pass upon their validity "if based upon considerations which would be valid between individuals." Here, however, the bankrupt had no right which he might have enforced against an individual. If a private corporation had bought or condemned the land on "Gunpowder Neck" and used it for some other purpose than raising tomatoes, the bankrupt's business would have been just as completely destroyed as it was by the government's taking it for military purposes; but we think that no one would contend that in such case the bankrupt would have had any cause of action on account of the taking of his neighbor's lands, whatever might have been the effect of such taking on his business. In Maryland he could not have recovered such consequential damage. Green v. City & Suburban Railroad Co., 78 Md. 294, 28 A. 626, 44 Am. St. Rep. 288; Baltimore v. Marine Works, Inc., 152 Md. 367, 136 A. 829. And this is the general rule, in the absence of statute changing the common law. Joslin Mfg. Co. v. Providence, 262 U. S. 668, 675, 43 S. Ct. 684, 67 L. Ed. 1167.

We have carefully considered the decision of the Supreme Court in Williams v. Heard, supra, 140 U. S. 529, 11 S. Ct. 885, 888, 35 L. Ed. 550, upon which the trustee strongly relies. The facts of that case were that the sum of $15,500,000 had been awarded the government of the Unit-

ed States by the tribunal of Arbitration at Geneva and had been paid by the government of Great Britain on account of the depredations of the Alabama and other Confederate cruisers which had sailed from British ports, and a commission created by Congress had apportioned this award among private claimants who had suffered damage as a result of the depredations on account of which the award was made. In holding that the claim of one of such claimants passed to his trustee in bankruptcy, notwithstanding that the bankruptcy occurred before the award by the commission to the claimant, the Supreme Court said: "While, as already stated, there were no means of compelling congress to distribute the fund received in virtue of the Geneva award, and while the claimant was remediless with respect to any proceedings by which he might be able to retrench his losses, nevertheless there was at all times a moral obligation on the part of the government to do justice to those who had suffered in property. As we have shown from the history of the proceedings leading up to the organization of the tribunal at Geneva, these war premiums of insurance were recognized by the government of the United States as valid claims for which satisfaction should be guarantied. There was thus at all times a possibility that the government would see that they were paid. There was a possibility of their being at some time valuable. *They were rights growing out of property; rights, it is true, that were not enforceable until after the passage of the act of congress for the distribution of the fund. But the act of congress did not create the rights. They had existed at all times since the losses occurred. They were created by reason of losses having been suffered. All that the act of congress did was to provide a remedy for the enforcement of the right.*" (Italics ours.)

The language which we have italicized points the distinction between that case and this. In that case, there were rights growing out of property, recognized by the law of nations, and all that Congress did was to provide a remedy for the enforcement of those rights. Here, there were no rights of any sort recognized either at law or in equity; and if the claim shall finally be allowed by Congress, the act allowing it will create the right under which claimant will take, and not merely provide a remedy for the enforcement of

a right already in existence. Until Congress shall act, all that claimant has, as pointed out above, hardly rises to the dignity of an expectancy, but is a mere hope that he will receive something in the future through the generosity of Congress. If a private individual or corporation, whose agent has caused loss to another through representations for which the principal is not liable, should decide as a matter of grace to make a gift to such injured person on account of his loss, it would hardly be contended that such gift would pass to the trustee in a bankruptcy proceeding instituted prior to the gift; but there would be just as much reason in so holding as in holding that any award which may be made by Congress to the bankrupt here would pass to his trustee. As said by Judge Bradford in Re Wetmore (C. C. A. 3d) 108 F. 520, 523: "A bare possibility or mere expectation of acquiring property does not constitute property or a title to property; nor can it be transferred or levied upon. While the right of enjoyment may be uncertain and contingent, it is necessary that an interest or title of some kind be vested in the bankrupt in order that it may pass by operation of law to the trustee."

In the recent case of Suskin & Berry v. Rumley, supra (C. C. A.) 37 F.(2d) 304, 306, 68 A. L. R. 768, we held that under the law of Maryland a remainder contingent as to the persons to take could not be sold under execution and did not pass in bankruptcy, quoting with approval the following statement of the Maryland Court of Appeals in Godwin v. Banks, 87 Md. 425, 40 A. 268: "The common law declares all contingent estates, when the person to take is not ascertained, to be a mere possibility, not coupled with an interest, and to be neither devisable, descendible, alienable by voluntary conveyance, or subject to execution. 4 Kent, Comm. 261; 2 Washb. Real Prop. 238. Such a naked possibility is in law neither an estate, property right, nor claim. One having such a possibility may, in the future, have a rght or claim, but cannot be correctly said to have any existing right or claim. This was held in Jackson v. Waldron, 13 Wend. (N. Y.) [178] 221, 222, prior to the statute of New York making all contingent estates descendible and devisable, where Senator Tracy, in the opinion which prevailed, said: 'A mere naked possibility is in law no interest, and there was nothing which

could pass by his release. "Ex nihilo nihil fit." A mere possibility is not a right in being, but an abstraction too remote and uncertain for any form of conveyance to reach.' In the absence of a statute changing the common law, these principles are as sound and satisfactory at this day in Maryland as they were in New York in 1834, when they were announced there."

All of the reasons which preclude a contingent estate from being transferred or sold under execution or passing to a trustee in bankruptcy apply with greater force to a situation such as this, where there is not even a contingent estate but merely an expectancy or hope of receiving a gratuity from Congress. The possibility that Congress may grant such gratuity, in the one case, is more nebulous even than the possibility that the remainder may be cast so as to vest an estate, in the other. And as said in Jackson v. Waldron, 13 Wend. (N. Y.) 178, 221, 222, and quoted with approval in Godwin v. Banks, supra: "A mere naked possibility is in law no interest. * * * A mere possibility is not a right in being but an abstraction too remote and uncertain for any form of conveyance to reach."

If the trustee in bankruptcy has the right to prosecute this claim of the bankrupt, he has a right to sell it as a part of the estate; and we do not think that a claim upon the bounty of Congress should be thus taken from an unfortunate bankrupt and vested in a stranger for the insignificant consideration that such a claim would probably bring upon sale. Congress could, of course, prevent its bounty from going to such a purchaser of the claim by refusing to grant the bounty, or by providing that it should be paid to the bankrupt notwithstanding the sale; but the fact that this may be done shows that the claim is not property of the bankrupt and that any payments which bankrupt may receive on account of it are "payments by way of gratuity,—payments as of grace, and not of right." Blagge v. Balch, 162 U. S. 439, 457, 16 S. Ct. 853, 856, 40 L. Ed. 1039.

■ It is suggested that anything received by Archer on account of his claim ought to go to his creditors, on the theory that the debts which he owes them probably arose out of the business for the destruction of which he is asking recompense. But, as a matter of fact, it does not appear that the debts arose out of this business. It appears that the government's acquisition of property was in 1917 and any injury to Archer's business presumably occurred either then or in the following year. He did not file a petition in bankruptcy until the year 1926, at least eight years afterward, and there is no reason to suppose that the debts which he owed at that time were the same debts that he owed eight years before. But even if this were the case, we think it would make no difference. If Congress authorizes the payment of the claim, it will, as we have seen, in doing so create a new right in Archer, not merely provide a remedy for the enforcement of a right already existing; and a right thus arising after the filing of the petition in bankruptcy could not, under any theory, pass to the trustee under the provisions of the Bankruptcy Act which we have quoted.

■ For the reasons stated, we think that the petition of the trustee in bankruptcy was properly denied. As to procedure, we think that this was a controversy arising in bankruptcy which was properly reviewable under section 24a of the Bankruptcy Act, 11 USCA § 47 (a), and not a "proceeding" reviewable by petition to superintend and revise under section 24b, 11 US CA § 47 (b). In No. 3869, therefore, the appeal to superintend and revise will be dismissed. In No. 3893 the order appealed from will be affirmed.

In No. 3869, appeal dismissed.

In No. 3893, affirmed.

NORTHCOTT, Circuit Judge (dissenting).

I am of the opinion that the trustee should be allowed to prosecute this claim before the Court of Claims. The real parties at interest, the persons damaged by the action of the government in destroying Archer's canning business, were Archer's creditors and not Archer himself. The debts from which he was relieved by being adjudicated a bankrupt probably grew out of the very business for the destruction of which he is claiming recompense. In any event, his insolvency was brought about by the act of the government. It was the creditors that suffered, not Archer. Courts of bankruptcy are governed by equitable principles, and it seems to me unfair that Archer, and not the creditors who suffered the loss, should be the beneficiary of any appropriation Congress may make after the Court of Claims reports its

findings. To hold otherwise would, in the event that Congress acts, give the bankrupt a substantial profit at the expense of those who trusted him.

I do not think it can be concluded that any appropriation that Congress may make is a pure gift or bounty. Certainly Congress would not make any appropriation for Archer's relief if he did not have some equitable or moral claim based upon the damage suffered through the action of the government in taking the property in the neighborhood of Archer's canning plant. The claim that Archer had was, in my opinion, property, and in the event of recovery on the claim, Archer's creditors should be entitled, to the extent of their debts, to be reimbursed.

This case, as I see it, comes squarely within the rule laid down in Williams v. Heard, 140 U. S. 529, 11 S. Ct. 885, 35 L. Ed. 550, in that Archer's rights grew out of property. There are rights that are not enforceable until Congress acts, but if Congress does act such action does not create the right but provides a remedy for the enforcement of a right that already exists.