### ARKWRIGHT MUTUAL INSURANCE COMPANY
v.
### BARGAIN CITY, U.S.A., INC.
### Civ. A. No. 33485.

United States District Court
E. D. Pennsylvania.
Feb. 14, 1966.

George E. Beechwood, Philadelphia, Pa., for plaintiff.

Mesirov, Gelman, Jaffe & Levin, Edward Greer, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

Initially before us was plaintiff's motion for summary judgment. After argument thereon, and a later argument ordered by the Court on one question not previously briefed or argued, the parties have stipulated of record that the Court shall adjudicate the matter as if each had filed a motion for summary judgment.

This case presents a rather unusual factual situation. Arkwright Mutual Insurance Company (Arkwright) sought injunctive and other relief against Bargain City, U.S.A., Inc. (Bargain City) with respect to a payment which Arkwright alleged Bargain City was about to receive from the United States to compensate Bargain City for property damage resulting from the crash of a naval aircraft.

The controversy between Arkwright and Bargain City involves the issue of ownership of $100,000, a part of the sum paid by the United States and now held in the Court Registry, pursuant to an order of May 28, 1963.

The material operative facts are undisputed. In the application of the law to these facts the parties differ widely.

Arkwright had issued a policy of insurance before August 27, 1961 insuring Bargain City, and others, against loss of rental income from the buildings and structures, designated therein as Store No. 10, in Montgomery County, Pennsylvania. Among the perils insured against was loss of rental income resulting from physical damage to the premises by the impact of aircraft. The policy was in effect when, on August 27, 1961, a jet aircraft, owned by the United States and operated by personnel of the Navy Department, crashed into the Bargain City store, causing substantial physical damage thereto, and resulting in actual loss of rental income to Bargain City in excess of $100,000. Though this loss was within the policy coverage, Bargain City made claim against the United States for the sundry damages caused by the plane crash, including loss of rental income.

Bargain City informed Arkwright that the Navy Department had agreed to recommend to the Director of the Bureau of the Budget that the United States pay $156,000 to Bargain City in settlement of its claim for loss of rental income, and that Bargain City had agreed to accept that sum in full satisfaction of that claim.

In March 1962, Bargain City requested Arkwright to advance $100,000, pending payment of the $156,000 to Bargain City by the United States. Arkwright assented and *loaned* $100,000 to Bargain City, under the terms of a written receipt and agreement dated March 23, 1962, and a *loan receipt* of like date. The agreement recited, inter alia, that as a result of the "crash," claim had been made by Bargain City against Arkwright for payment for loss of rental pursuant to the policy; that by agreement of the parties, however, *such claim had been held in abeyance* and Bargain City had made claim against the Department of the Navy for payment of all losses incurred as a result of the crash, including its claim for loss of rental; that Bargain City had now agreed to accept in full satisfaction of its claim against the Navy for loss of rental the sum of $156,000, and that Bargain City desired to obtain an advance of funds from Arkwright in the amount of $100,000 pending actual pay-

ment by the United States of Bargain City's claim. The agreement provided, inter alia,

"In consideration of the payment of $100,000 by Arkwright to Bargain City, the receipt of which is hereby acknowledged, and intending to be legally bound hereby, Bargain City agrees as follows: .

\* \* \* \* \* \*

"2. Bargain City will pay to Arkwright all sums paid to it by the United States on account of its claim for loss of rental up to the amount of $100,000.

"3. At Arkwright's request Bargain City will execute and deliver such instruments of assignment or authority as will permit the disbursing authorities of the United States to make payment with respect to Bargain City's claim for loss of rentals directly to Arkwright provided, however, that it shall be a condition to or term of such instrument of assignment or authority that Arkwright shall forthwith pay over to Bargain City all sums paid by the United States in excess of $100,-000."

The policy of insurance issued by Arkwright to Bargain City provided:

"Subrogation—This Company *may require from the Insured an assignment* of all right to recovery against any party for loss to the extent that payment therefore is made by this company \* \* \* ." (emphasis supplied)

After a meeting between representatives of Bargain City and the officials of the Navy Department, the Under Secretary of the Navy wrote to the Hon. David E. Bell, Director, Bureau of the Budget, on April 23, 1962, stating, in part:

"Bargain City, U.S.A., Inc., 2202 Walnut St., Philadelphia, Pa. On August 27, 1961, U.S. Navy FJ–3, Bureau No. 141392 while being flown by a naval aviator on a duly authorized flight, crashed into the Bargain City Department Store in Horsham, Pa., where the claimant managed the general operation of a mercantile business. As a consequence of the crash the claimant suffered losses of profits in the amount of $156,000 and damage to store fixtures in the amount of $72,404.34, which amounts the claimant has agreed to accept in full satisfaction of its claim.

Amount claimed $285,106.30; amount reported, $228,404.34."

On October 19, 1962, Bargain City filed a petition in this Court, proposing an Arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq., and two receivers were appointed pursuant to 11 U.S.C. § 732. In Schedule A–3, filed by Bargain City in the Chapter XI proceedings, listing creditors whose claims are unsecured appears the following:

*Arkwright Mutual Insurance Co. ...... 100,000
*Advance re: Horsham airplane crash claim against U. S. Navy.

In Schedule B–3 in the same proceedings, listing choses in action, appears the following:

Claim against U. S. Navy Department arising out of Navy Airplane crash at Store #10, Horsham, Pa., on August 27, 1961. Claim adjusted, but not yet covered by Congressional appropriation $228,404.

Arkwright filed no claim in the Chapter XI proceedings, nor did it *formally* appear therein.

The Chapter XI proceedings terminated on March 12, 1963, by confirmation of an arrangement providing for payment to general unsecured creditors of 15% of their claims, payable in monthly installments. Arkwright has declined to accept payment as a general creditor.

Payment by the United States to Bargain City on its request for compensation was authorized by passage of a supplemental Appropriations Act of May 17, 1963, 77 Stat. 20. Bargain City received payment on June 8, 1963, and, as already noted, $100,000 of that payment is held in the Registry of this Court pending determination of these proceedings.

■ One of Arkwright's contentions is that the fund was impressed with a trust in its favor, at least to the amount of $100,000. We perceive no merit in this claim by which Arkwright seeks to transform a creditor-debtor relationship into a trust, in order to obtain a preferred status over other creditors in the Chapter XI proceedings. See Restatement of Trusts, 2d, §§ 9, 10 and 12.

Arkwright strongly urges that, under the terms of the written agreement of March 23, 1962, supra, it has an equitable lien upon the fund now in the Registry of this Court. We disagree.

■ "An equitable lien springs from an equitable assignment." In re Dier, et al., 296 F. 816, 819 (3 Cir. 1924); cert. denied sub nom. Ehrich, Trustee, et al., 265 U.S. 584, 44 S.Ct. 459, 68 L.Ed. 1191 (1924).

In Pomeroy's view the interest which equity recognizes, when obtained through an assignment or through an order which operates as an assignment, is in the nature of an equitable property, which, in his analysis is more than an equitable lien. Pomeroy regards it as an established doctrine in equity that an equitable assignment of a specific fund in the hands of a third person creates an equitable property in that fund. See Pomeroy's Equity Jurisprudence, 5th ed. Vol. 4, § 1280 and footnote 18 (p. 804).

The same authority states, p. 806:

"In order that the doctrine may apply, and that there may be an equitable assignment creating an equitable property, there must be a specific fund, sum of money, or debt, actually existing or to become so *in futuro*, upon which the assignment may operate, and the agreement, direction for payment, or order, must be, in effect, an assignment of that fund or of some definite portion of it. The *sure criterion* is whether the order or direction to the drawee, if assented to by him, would create an absolute personal indebtedness payable by him at all events, or whether it creates an obligation only to make payment out of the particular designated fund." (latter emphasis ours)

Pomeroy carefully distinguishes between an order on a future fund which operates as an equitable assignment and a mere promise to appropriate a future fund in discharge of an obligation or a mere promise to give an order on the fund. He states that American Courts " * * * require a present appropriation by order or otherwise, of a fund, whether existing or future, a mere promise or executory agreement to apply or to appropriate a fund does not, * * amount to an equitable assignment." Pomeroy's Equity Jurisprudence, supra, § 1283a.

■ "A mere agreement, whether by parol or in writing to pay a debt out of a designated fund, *when received,* does not give an equitable lien upon the fund, or operate as an equitable assignment of it. The agreement is personal merely." Jones on Liens, Vol. I, § 48 (emphasis supplied).

■ "To constitute an equitable lien on a fund, there *must be some distinct appropriation* of the fund by the debtor, such as an *assignment* or *order* that the creditor should be paid out of it." Jones on Liens, supra, § 50, (emphasis supplied); see, also, 33 Am.Jur. Liens § 20.

■ Whether what Arkwright claims be termed an "equitable property" in or an "equitable lien" upon the fund, we think the written agreement and receipt of March 23, 1962, was not an equitable assignment and, so, Arkwright acquired thereunder neither an equitable lien upon nor an equitable property in the fund. In our view paragraph 2 of the agreement, supra, was a mere promise by Bargain City to appropriate the anticipated fund, up to $100,000, in discharge of its obligation to Arkwright—and no more; and paragraph 3 of the agreement was but a promise by Bargain City to execute and deliver, *in the future,* such assignments or orders as Arkwright might, *in the future* request. Neither paragraph can fairly be construed as *a present appro-*

*priation* of the future fund. Ex parte Tremont Nail Co., 24 Fed.Cas.No. 14,168, p. 183 (D.C.Mass. 1877); Jackman v. Newbold, 28 F.2d 107, 62 A.L.R. 729 (8 Cir. 1928); Jamison Coal & Coke Co. v. Goltra, 143 F.2d 889, 154 A.L.R. 1191 (8 Cir. 1944); In re Conoley, 50 F.Supp. 543 (S.D.N.Y. 1942); Cabell v. Markham, et al., 69 F.Supp. 640 (S.D.N.Y.) aff'd 162 F.2d 153 (2 Cir. 1947).

Our Court of Appeals in In re Dier, supra, said:

> "To constitute an assignment good even in equity there *must be an actual or constructive appropriation of the subject matter, a perfected transaction* between the parties, *intended to vest in the assignee a present right,* even where the circumstances do not admit of its immediate exercise." (emphasis supplied)

Arkwright made no requests for the execution and delivery by Bargain City of the instruments of assignment or authority contemplated by paragraph 3 of the agreement before the Chapter XI proceeding, nor did Bargain City ever execute or deliver any such instruments. No notice of the agreement was ever given to the United States. Sundheim v. Philadelphia School District, et al., 311 Pa. 90, 103, 166 A. 365 (1933).[1]

Exceptions to the strict rule governing equitable liens and equitable assignments have been recognized by the United States Supreme Court in cases involving *contingent fees of attorneys* and in cases concerning liens on *personal property put up and held as collateral security.* B. Kuppenheimer & Co., Inc. v. Mornin, 78 F.2d 261, 264, 101 A.L.R. 75 (8 Cir. 1935) distinguishing Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865 (1897); Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530

(1914); Ingersoll v. Coram, 211 U.S. 335, 29 S.Ct. 92, 53 L.Ed. 208 (1908).

■ Receivers appointed in Chapter XI proceedings are not "voluntary assignees" and, so, are not bound by the *personal agreement* between Arkwright and Bargain City. See Fourth St. Nat. Bank v. Millbourne Mills Co.'s Trustee, 172 F. 177, 179, 30 L.R.A.,N.S., 552 (3 Cir. 1908) cert. dismissed 217 U.S. 610, 30 S.Ct. 697, 54 L.Ed. 902 (1909).

In reaching its conclusion the Circuit Court applied the controlling Pennsylvania law, as set forth in Duplex Printing Press Company v. Clipper Publishing Company, 213 Pa. 207, at p. 212, 62 A. 841, at p. 842 (1906) which held:

> "A *voluntary assignee* for the benefit of creditors is a mere representative of the debtor and is bound where he would be bound (Wright v. Wigton, 84 Pa. 163); but Tams v. Bullitt, [35 Pa. 308] establishes the distinction that when the assignee, trustee, or whatever he may be called derives his authority, not from the mere voluntary act of the assignor, but from the mandate of the law, even when enforced in the language of that case, through a 'compulsory assignment' from the debtor in the interest of the creditors, he represents the latter, and is vested with their powers. *The same principle applies a fortiori to a receiver deriving his authority, not at all from the debtor, but altogether from the court acting in the interest and for the enforcement of the rights of creditors."* (emphasis supplied)

Were we to assume for the purposes of the present motions that Arkwright's claim is valid, *as against Bargain City alone,* the question would be presented whether the enforcement of Arkwright's

---

1. The plaintiff relies heavily on Hurley v. Ashbridge, 55 Pa.Super. 523, 527 (1914). This case is not inapposite to our conclusion in the instant matter. In Ashbridge there was an agreement to pay a loan of out of the proceeds of a sale of real estate *then owned by the debtor.* While the fund from the sale was to be received in the future there was a *present pledge secured by the existing real estate* underlying the fund. Also, *the debt stood for labor and material furnished by the lender in the improvement of the very property which produced the fund.* This fact gave the creditor a strong equity in the fund.

claim is barred by the Chapter XI proceedings.

Bargain City contends that Arkwright's loan to it was an unsecured debt which was discharged in the arrangement proceeding. It insists that Arkwright never perfected its claimed lien upon the future fund, and that, under § 70(c) of the Bankruptcy Act, Bargain City's receivers were "vested with title" to its claim against the United States which was "scheduled in arrangement." See § 70(c), 11 U.S.C. § 110(c) provides, inter alia,

"The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

Arkwright, on the other hand, contends that the bankruptcy court never had "possession," within the meaning of bankruptcy law, either of Bargain City's claim against the United States or of the proceeds of that claim, and that, in consequence, "it had no valid basis upon which it could assert jurisdiction over the claim, its ultimate proceeds or the rights of the plaintiff and defendant thereto."

On this score we think the real question is whether or not Bargain City's claim or rights to claim against the United States ever became part of the debtor's estate in the Chapter XI proceedings.

Section 70(a) of the Bankruptcy Act, 11 U.S.C. § 110(a), in relevant part, provides:

"(a) The trustee of the estate of a bankrupt * * * shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title * * * to all of the following kinds of property wherever located * *
(5) *property, including rights of action,* which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: * * * (6) *rights of action arising upon* contracts or usury, or the unlawful taking or detention of or *injury to his property* * * * ." (emphasis supplied)

Moreover, as stated in 8 Collier on Bankruptcy, at p. 920:

"Even though a trustee cannot be appointed during the administration of a § 322 case under Chapter XI, nevertheless § 70a is not inapplicable in those cases. A receiver may be appointed, or else the debtor continues in possession. While a receiver does not have title, § 70a does not merely vest title but also determines that certain property becomes a part of the estate for administration. Hence with some exceptions § 70a is applicable in § 322 cases where there is a receiver, and also in § 321 cases where there is a receiver, to determine the property of the estate to be administered by the receiver."

Bargain City's claim against the United States was presented, as we understand it, pursuant to the Military Claims Act of 1956, 10 U.S.C. § 2733. This Act permits the Secretary of the Navy to pay up to $5,000 of a claim against the United States and report the excess to Congress for consideration and payment.

█ In our opinion Bargain City had, as well, a right of action against the United States under the Federal Tort Claims Act. 28 U.S.C.A. §§ 1291, 1346, 1402, 1491, 1504, 2110, 2401, 2402, 2411, 2412, 2671–2680. It was free to pursue its remedies under either or both Acts, concurrently or successively. That Bargain City elected to proceed first, and successfully, under the Military Claims Act only obviated the necessity of proceeding under the Tort Claims Act, but did not negate its "right of action" for "injury

to its property" under the latter. In these circumstances we find that Bargain City's claim against the United States was the assertion of a right of action for injury to its property which constituted a part of the estate of the debtor to be administered in Chapter XI proceedings. 9 Am.Jur.2d § 874; 11 U.S.C. § 110(a) (5) (6).[2]

In Harlan v. Archer, 79 F.2d 673, 677, 102 A.L.R. 149 (4 Cir. 1935) cert. denied, 296 U.S. 656, 56 S.Ct. 383, 80 L.Ed. 467 (1935) Judge Parker, speaking for the court, in discussing claims against the Government which pass to the trustee in bankruptcy restated the law as set forth in an earlier case as follows:

"The distinction between claims against the government which are assignable and pass to the trustee in bankruptcy, and those which are not assignable and do not pass, was well expressed by the Court of Claims in Campbell, Assignee v. United States, 28 Ct.Cl. 512, 513, in the following language:

"Three things concerning the assignment of claims against the Government may be regarded as well settled:

"(1) *That such claims as are choses in action upon which a suit can be maintained as a matter of legal right, if there be a jurisdiction,* and in which 'there is no element of a donation in the payment ultimately made' (case cited) pass in bankruptcy and may be prosecuted by the assignee or by the purchaser in bankruptcy proceedings. (cases cited)

"(2) That the title to what is known as abandoned and captured property, not having been divested by capture, a claim for the proceeds in the Treasury is a cause of action which passes in bankruptcy, al-

though no jurisdiction exists at the time in which it can be prosecuted. (cases cited)

"(3) That a mere expectancy, a claim founded on no legal right known to courts of law or equity, a claim which is but an appeal to the clemency of Congress for the redress of an injury, where there is no obligation on the part of the Government, and the granting of relief is purely a matter of legislative discretion, can not be regarded as property and does not pass in bankruptcy. (cases cited)"

Having determined that Bargain City's claim against the United States was a "right of action" which became, in the Chapter XI proceeding, a part of the estate for administration, we conclude, too, that Arkwright's claimed lien was unperfected under the Pennsylvania Uniform Commercial Code 12A P.S. (Pocket part) §§ 9–102(1), 9–203, 9–301(3), 9–302, 9–303.

▬ Arkwright apparently took a calculated risk in omitting to obtain an assignment and to appear and assert its claim in the Chapter XI proceedings. Equity will not lend its ameliorative powers to remedy calculated omissions at the expense of other unsecured creditors who remain unpaid under the Arrangement proceedings. Contrary to the plaintiff's claim of unjust enrichment, it is Arkwright which seeks preferred treatment in the disbursement of this fund in which all other creditors are entitled to participate.

### ORDER

Now, this 14 day of February, 1966, it is ordered that:

1. The plaintiff's motion for summary judgment be, and it is, denied.

2. The defendant's motion for summary judgment will be granted.

---

2. Also see 32 C.F.R. § 750.30(d) which deals with limitations on transfers and assignments under the Federal Tort Claims Act and the Military Claims Act. This regulation specifically recognizes that the assignment by operation of law to a receiver or trustee in bankruptcy of a claim against the United States is exempt from the Assignment of Claims Act, 31 U.S.C.A. § 203.